ROBBINS RESOURCE RECOVERY PARTNERS, L.P.; Foster Wheeler Robbins, Inc.; Foster Wheeler Illinois, Inc.; Foster Wheeler Corporation; and The Village of Robbins, Plaintiffs,

v.

James EDGAR, in His Official Capacity as the Governor of the State of Illinois; The Illinois Commerce Commission; William Dickson, Richard Kolhauser, Ruth Kretschmer, Karl McDermott, and Dan Miller, in Their Official Capacities as Commissioners of the Illinois Commerce Commission; and the State of Illinois, Defendants.

No. 96 C 1735.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 1, 1996.

Norman J. Barry, Joseph P. Della Maria, Jr., Alan S. Madans, Christopher G. Walsh, Jr., Robin Korman Powers, Rothschild, Barry & Myers, P.C., Chicago, IL, for plaintiffs Robbins Resource Recovery Partners, L.P., Foster Wheeler Robbins, Inc., Foster Wheeler Illinois, Inc., Foster Wheeler Corp.

Mark H. Sterk, Odelson & Sterk, Ltd., Evergreen Park, IL, for plaintiff Village of Robbins.

Elizabeth Jean Cisar, Alexander Ewing, Environmental Law & Policy, Chicago, IL, Howard Alan Learner, Environmental Law and Policy, Chicago, IL, for intervenors South Cook Environmental Action Coalition, Citizens for a Better Environment, Sierra Club (Illinois Chapter), American Lung Association of Metropolitan Chicago, Environmental Law and Policy Center of the Midwest, Illinois Environmental Council.

Robert J. Kelter, Citizens Utility Board, Chicago, IL, Richard C. Balough, Chicago, IL, for intervenors Citizens Utility Bd., Ernest Young, Carl R. Williams, Adolph Coleman and Gloria Scott.

Iain D. Johnston, Illinois Attorney General's Office, Chicago, IL, Michael White Coffield, Kevin Michael Flynn, James G. Richmond, Ungaretti & Harris, Chicago, IL, Malcolm Hirsten Brooks, Richard A. Redmond, Steven B. Varick, Marc L. Fogelberg, McBride, Baker & Coles, Chicago, IL, for defendants James Edgar, Illinois Commerce Commission, William Dickson, defendant.

*Memorandum Opinion and Order*

ZAGEL, District Judge.

*Facts*

In 1987, the Illinois legislature passed the Retail Rate Statute which created a scheme to promote the development of alternate energy production facilities and conserve energy. 220 ILCS 5/8–403.1. This statute required Illinois utility companies to enter into twenty-year contracts to purchase electricity from qualified solid-waste-to-energy facilities ("QSWEF") at retail rate instead of at the federally set regulatory rate. Then, the State would grant tax credits to the utility companies for an amount equal to the difference between the retail rate paid and the federal rate normally paid by utility companies when the former exceeded the latter. The statute also required QSWEFs entering into such contracts to reimburse the State for the tax credits after retirement of the debt issued to finance the facilities.

Plaintiffs, Robbins Resource Recovery, L.P. ("Robbins"), Foster Wheeler Robbins, Inc. ("FWR"), and Foster Wheeler Illinois, Inc. ("FWI") formed a partnership to develop and operate a municipal recycling-and-solid waste-to-energy facility ("Waste Facility"). Plaintiff, Foster Wheeler Corporation ("FWC"), owns FWR and FWI as subsidiaries. For ease, these parties shall be referred to as "the Partnership." The Partnership entered into an agreement with the Village of Robbins ("the Village"), a municipality located in Cook County, Illinois and a plaintiff in this case, to construct and operate a Waste Facility there. The Partnership planned to use this facility to process and recycle municipal solid waste and to create electricity by combusting refuse-derived fuel.

On February 20, 1992, and again on August 17, 1994, the Illinois Commerce Commission ("ICC") issued orders declaring that the Partnership's facility qualified as a QSWEF. In 1994, the Partnership received federal and state approvals to develop this site and began constructing a Waste Facility in the Village. On or about September 16, 1994, the Partnership entered into the type of contract described in the Retail Rate Statute with Commonwealth Edison ("ComEd"), a utility company. Under this contract, ComEd agreed to purchase electricity from the Partnership at retail rate so long as QSWEF status was maintained and ComEd was able to receive state tax credits. The Facility was scheduled to begin full commercial operation in the beginning of 1997.

On March 16, 1996, the Illinois legislature amended the Retail Rate Statute. It thereby revised the definition of QSWEFs to cover only facilities that convert methane gas into electricity. The Partnership's Waste Facility does not qualify as a QSWEF under the amended definition because its facility does not use methane gas.

Plaintiffs filed a five-count complaint against the State of Illinois, the Illinois Commerce Commission, the Governor of Illinois in his official capacity, and the five Commissioners of the ICC in their official capacities. Plaintiffs alleged federal claims of: (1) unconstitutional impairment of contract; (2) unconstitutional taking in violation of the Fifth and Fourteenth Amendments; (3) violation of the Equal Protection clause; (4) violation of the Fourteenth Amendment Due Process clause; and (5) violation of 42 U.S.C. § 1983.

Defendants move to dismiss for lack of subject-matter jurisdiction and alternatively urge the court to abstain from deciding this matter until the Illinois state court issues a final judgment in a similar pending case.

*ANALYSIS*

■ On a motion to dismiss, the court tests the sufficiency of the complaint, not the merits of the lawsuit. *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir.1989). The court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Dimmig v. Wahl*, 983 F.2d 86, 87 (7th Cir.1993). A court will only grant a motion to dismiss if it is clear that the plaintiff cannot prove any set of facts that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

■ The State of Illinois and the ICC say they are immune from suit in federal court under the Eleventh Amendment. The Eleventh Amendment to the United States Constitution states:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

■ Pursuant to this amendment, private parties may not sue an unconsenting state in federal court unless Congress abrogates state immunity. *MSA Realty Corp. v. State of Illinois*, 990 F.2d 288, 291 (7th Cir. 1993) (citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984)). The Eleventh Amendment applies to state agencies the same way that it applies to states. *Kroll v. Board of Trustees of Univ. of Illinois*, 934 F.2d 904, 906 (7th Cir.1991); *see also Alabama v. Pugh*, 438 U.S. 781, 781–82, 98 S.Ct. 3057, 3057–58, 57 L.Ed.2d 1114

(1978) (per curiam). In this case, the State of Illinois and its agency, the Illinois Commerce Commission ("ICC") assert their constitutional immunity to bar this suit, and Congress has not abrogated immunity as to any of the federal claims made. Notably, plaintiffs conceded in their answer brief that the claims against the State of Illinois and the ICC are barred by the Eleventh Amendment.[1] Consequently, I dismiss the State of Illinois and the ICC from this litigation.

■ The Governor of Illinois and the members of the ICC seek dismissal in their official capacities because, they maintain, plaintiffs' claims are actually for monetary relief even though couched in terms of equitable relief. Plaintiffs reply that their demands for injunctive and declaratory remedies against these state officials should not be dismissed because they are proper *Ex parte Young* proceedings attempting to prevent the Governor and the ICC officials from violating federal law. *See Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

■ Deciding whether claims against state officials are barred by the Eleventh Amendment is sometimes complicated. Lawsuits against state officials in their personal capacities raise no immunity issues; they are liable just as private citizens are for their own actions. *See Kroll*, 934 F.2d at 907 (citing *Kentucky v. Graham*, 473 U.S. 159, 165–67, 105 S.Ct. 3099, 3104–06, 87 L.Ed.2d 114 (1985)). Plaintiffs in these types of lawsuits may seek relief only from the individual official, not from the state. By contrast, suits against state officials in their official capacity should be treated as suits against the state because the real party in interest is the entity for which the official works. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 361, 116 L.Ed.2d 301 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985)).[2] Accordingly,

---

1. Plaintiffs explained their inclusion of these defendants as an invitation for the State and the ICC to consent to be sued.

2. These distinctions are often formal rather than substantive because states often indemnify officials and employees for damages they pay in

personal capacity lawsuits. The formality, however, is quite important. Indemnification is a voluntary choice made by each state just as consent to be sued would be a voluntary choice.

official-capacity suits seeking retroactive relief, i.e. money damages from the state treasury, are barred by the Eleventh Amendment because the real party in interest is the State, whether or not it consents. *Kroll*, 934 F.2d at 907. A private party may, of course, assert an official-capacity suit against a state official to seek prospective relief to prevent violations of federal law. *Ex parte Young*, 209 U.S. at 154, 28 S.Ct. at 452. A state officer who will violate federal law is not entitled to sovereign immunity because he is "stripped of his official or representative character and subjected in his person to the consequences of his individual conduct." *Id.*, 209 U.S. at 160, 28 S.Ct. at 454. "All that [prospective relief] such [as] an injunction does is require the state to confine its future activity within the limits set by federal law." *Osteen v. Henley*, 13 F.3d 221, 223 (7th Cir. 1993).

In this case, both sides agree that, on its face, the complaint requests prospective relief. There is a real issue of the true nature (as opposed to the nominal character) of the relief sought—whether plaintiffs essentially seek equitable or monetary relief.

■ "[T]he type of relief barred by the Eleventh Amendment and that permitted under *Ex parte Young* will not in many instances be that between day and night." *Edelman v. Jordan*, 415 U.S. 651, 667, 94 S.Ct. 1347, 1357, 39 L.Ed.2d 662 (1974). *Ex parte Young* does not authorize any type of relief against a state official so long as it is labeled "equitable" in nature if such relief in practice resembles a money judgment payable out of the state treasury. *Id.* at 666, 94 S.Ct. at 1357. Turning to the complaint, plaintiffs ask this court to:

[1] declare that the amendment is unconstitutional ... as it applies to plaintiffs' Facility ... [2] permanently enjoin defendants ... from enforcing or implementing the amendment with respect to the Facility ... [3] permanently enjoin defendants ... from enforcing or implementing the amendment so as to deprive FW Plaintiffs of the retail rate ... [4] declare that the amendment is null, void and of no effect as applied to plaintiffs' Facility....

This language appears to demand equitable relief; does it do so in fact? In determining whether a request for injunctive relief actually constitutes a demand for monetary relief, I look to *MSA Realty Corp. v. State of Illinois*, 990 F.2d 288 (7th Cir.1993) where plaintiff bought municipal bonds serviced by incremental taxes that the State remitted to the Village of Buffalo Grove pursuant to statute. Subsequently, the State amended the statute and reduced the increment that would be returned to participating municipalities. Like the plaintiffs here, MSA Realty sued the State of Illinois, the Governor, and other state officials alleging that they unconstitutionally impaired the plaintiff's contract rights and demanded that the court enjoin the state from enforcing the amended statute. The Seventh Circuit found that MSA Realty could only obtain the relief it wanted through an order directing the payment of funds out of the state treasury and thereby concluded that monetary damages were "the essence of the relief sought." *MSA Realty*, 990 F.2d at 294. In addition, the court announced a broader rule: the Eleventh Amendment bars injunctive relief that requires direct payments by the state from its treasury for the indirect benefit of a specific entity, that seeks to require state officials to carry out a task that only the state can perform in its political capacity or that seeks relief that is not merely ancillary to achieving compliance with a determination of a substantive federal constitutional wrong. *Id.* at 295.

If I were to grant plaintiffs' demands for relief, the State of Illinois would be ordered to treat plaintiffs' facility and others similarly situated as statutory QSWEFs. Thereby, the State would have to grant tax credits to ComEd and other utility companies that have entered into electricity sales contracts under the Retail Rate statute. Consequently, the State would collect fewer taxes from ComEd and other similarly situated utility companies, which would in turn cause a decrease in state revenues. A decrease in state revenues certainly and directly affects the state treasury. Thus, ordering an injunction in this case would affect the state treasury "for the indirect benefit of a specific entity," i.e. the plaintiffs. It would also "require state offi-

**1210**

cials to carry out a task that only the state can perform in its political capacity," that is to grant tax credits to ComEd and other similarly situated utility companies. These outcomes are not permissible under *MSA Realty*.

Still, plaintiffs contend that their suit is not barred under the ruling in *MSA Realty* because they are not seeking a remedy that would require the State to make any payments from its treasury. I acknowledge, that direct payments from the state treasury differ from tax credits. Yet, is this difference legally significant in this case? I conclude it is not. In what appears to be the only case to address this issue, a district court found that a tax credit was no different from present cash payments under the Eleventh Amendment because it is "still [a remedy] ... for accrued monetary liability that would be satisfied out of the general revenues of the state." *Swanson v. Powers*, 1990 WL 545761 (E.D.N.C.1990), *rev'd on other grounds*, 937 F.2d 965 (4th Cir.1991). The United States Supreme Court has stated that the Eleventh Amendment bars claims that would "expend [themselves] on the public treasury, ... interfere with the public administration," *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963), or "restrain the Government from acting or ... compel it to act." *Larson v. Domestic & Foreign Corp.*, 337 U.S. 682, 704, 69 S.Ct. 1457, 1468, 93 L.Ed. 1628 (1949).[3]

■ In the present case, ordering an injunction against the Governor and the ICC officials would force the State to grant tax credits to ComEd and other similarly situated utility companies for the next twenty years. There is no doubt that this would "expend itself on the public treasury ... [and] interfere with the public administration." *Dugan*, 372 U.S. at 620, 83 S.Ct. at 1006. Consequently, I find that although

this suit purportedly names state officials as defendants, the State of Illinois is "'the real, substantial party in interest.'" *Pennhurst*, 465 U.S. at 101, 104 S.Ct. at 908 (citing *Ford Motor Co. v. Department of Treas. of State of Indiana*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945)). In sum, I cannot grant injunctive relief against the Illinois state officials named in the complaint because they are immune in this case under the Eleventh Amendment. This conclusion also disposes of plaintiffs' request for declaratory relief. Generally, declaratory judgments are not designed to prevent ongoing violations of federal law, and thus the Eleventh Amendment prevents federal courts from ordering them as independent sources of relief. *Green v. Mansour*, 474 U.S. 64, 71, 106 S.Ct. 423, 427, 88 L.Ed.2d 371 (1985). So, this court lacks jurisdiction to grant plaintiffs' request for a declaratory judgment that the Retail Rate Statute is invalid as to them.

■ Finally, plaintiffs argue that even if the injunction they seek would affect the treasury of the State of Illinois, these effects are permissible because they would be merely ancillary. However, ancillary effects have traditionally been defined more narrowly than the plaintiffs suggest. An injunction has permissible ancillary effects when enjoining an official makes it more *likely* that he or she will spend money from the state treasury than if left free to pursue a previous course of conduct. *Edelman*, 415 U.S. at 668, 94 S.Ct. at 1358 (emphasis added). In the past when courts have allowed monetary damages ancillary to injunctive relief, they have primarily ordered state officials to stop violating federal law by refraining from doing "X" activity—e.g. violating civil rights, discriminating in schools, or administering welfare in a way that violated due process—even if it would cost the state some money. *See Hutto*

---

3. The Supreme Court has also spoken directly on the subject of direct government payments as compared to tax credits in the First Amendment context. In deciding what type of government aid had the effect of advancing religion under the Establishment Clause, the Court found that "the only difference [between a tax benefit and a tuition grant] is that one parent receives an actual cash payment while the other is allowed to reduce by an arbitrary amount the sum he would

otherwise be obliged to pay over to the State." *Committee for Public Educ. & Religious Lib. v. Nyquist*, 413 U.S. 756, 790–91, 93 S.Ct. 2955, 2974, 37 L.Ed.2d 948 (1973). This decision equating tax credits with cash payments and finding that tax credits impermissibly advance religion under the Establishment Clause, support my conclusion that tax credits impermissibly affect the state treasury under the Eleventh Amendment.

*v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) (approving an award of attorneys' fees payable out of the state treasury against state officials in a civil rights action, ancillary to granting injunctive relief); *Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977), (ordering the state to pay funds from the state treasury ancillary to upholding a school desegregation plan to remedy past discrimination); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (issuing an injunction that ordered state officials to observe constitutional standards of due process by processing government aid applications more quickly even though it might have ancillary effects on the state treasury).

Here, however, the only court remedy that would satisfy plaintiffs would have to affect the treasury of Illinois. Essentially, the plaintiffs have sued to preserve their contract with ComEd by ensuring that the State grants tax credits to the latter company. Unlike prior cases where courts have allowed ancillary monetary damages, enjoining the officials in this case would not merely make it "more likely" that the officials would interfere with the state treasury, it would require it. That is the essence of what plaintiffs want, and it is the only way that the alleged constitutional violations in this case could be remedied. Thus, I conclude that the primary—not ancillary—purpose and effect of ordering the defendants to refrain from enforcing the amended version of the Retail Rate Statute would be to affect the state treasury.

I find that all the named defendants in this case are immune to all of the federal claims asserted by plaintiffs under the Eleventh Amendment. This court thereby lacks subject-matter jurisdiction over this case. It is not necessary to analyze the validity of the defendants' alleged federal violations because even if the plaintiffs are correct, this court lacks power to hear this case. While the plaintiffs' claims may very well have merit, plaintiffs must assert them in state court, not in federal court. Finally, my disposal of this case on Eleventh Amendment grounds renders moot the issue of whether this court should abstain from deciding this case pending a state court decision.

CONCLUSION

This complaint is hereby dismissed because the Eleventh Amendment bars the claims asserted against defendants.

JUDGMENT

IT IS ORDERED AND ADJUDGED defendants motion to dismiss the complaint is granted. Complaint dismissed in its entirety. Plaintiffs takes nothing from defendants.