Docket No. 88267–Agenda 20–May 2000.

In re 
CONSOLIDATED OBJECTIONS TO TAX LEVIES OF SCHOOL DISTRICT No. 205, For the Years 1991 Through 1996 (People Who Care, Appellant, v. Tax Objectors, Appellees).

Opinion filed October 26, 2000.

JUSTICE BILANDIC delivered the opinion of the court:

This appeal arises from objections filed by tax objectors challenging the real estate taxes levied by the board of education of Rockford School District No. 205 (school district) to fund equitable remedies ordered in separate federal litigation involving school desegregation. The circuit court of Winnebago and Boone Counties granted summary judgment in favor of the tax objectors and held that the provisions of article IX of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/9–101 
et seq
. (West 1998)) did not authorize funding the equitable remedies in this case. When the school district did not file an interlocutory appeal, People Who Care, the plaintiff in the federal litigation, filed a petition to intervene. The circuit court allowed the petition and certified questions for appellate review. On interlocutory appeal, the appellate court answered the certified questions and affirmed the circuit court’s ruling. 306 Ill. App. 3d 1104. We granted People Who Care’s petition for leave to appeal. 177 Ill. 2d R. 315. 

This court granted leave to file 
amicus curiae
 briefs in support of People Who Care. The Illinois Association of School Boards, the Illinois Association of School Administrators, and the board of education of the City of Chicago filed a joint brief, as did the Chicago Lawyers’ Committee for Civil Rights Under Law, Inc., the Mexican American Legal Defense and Educational Fund, and the American Civil Liberties Union of Illinois. The Large Unit District Association filed its own 
amicus
 brief.

For the reasons set forth below, we affirm the judgment of the appellate court.

BACKGROUND

In 1989, People Who Care filed a class action against the school district in federal court, alleging that the school district had engaged in a pattern of intentional segregation and discrimination on a system-wide basis. In that action, People Who Care sought equitable and declaratory relief, and specifically requested injunctive relief. Prior to full adjudication on the merits, the parties entered into two court-approved interim agreements, where liability was not admitted. The first interim order modified a reorganization plan adopted previously by the school district. The second interim order was in the form of a preliminary injunction pursuant to which the school district was directed to carry out a detailed and comprehensive plan for system-wide changes in the operation of its schools. In conjunction with the second interim order, the federal court found that the school district was authorized to use the Tort Immunity Act to fund the cost of the remedial measures. This allowed the school district to levy additional property taxes and issue bonds.

In 1993, following a hearing, the magistrate judge issued a report, recommending that the school district be held liable for violating the constitutional rights of the minority student class. The federal court in 1994 entered a declaratory judgment order holding that the school district had unlawfully segregated and discriminated against its students. The federal court also entered a permanent injunction order against the school district, directing it to eliminate all vestiges of discrimination against the African-American and Hispanic students. 
People Who Care v. Rockford Board of Education School District #205
, 851 F. Supp. 905 (N.D. Ill. 1994).

In 1996, the federal court entered a “Comprehensive Remedial Order” (CRO), requiring the School District to implement and fund detailed system-wide desegregation remedies including a student assignment plan to desegregate schools, educational programs to address discrimination, and long-term capital improvements such as the renovation and construction of schools. The Seventh Circuit Court of Appeals modified certain portions of the remedial requirements set forth in the CRO. 
People Who Care v. Rockford Board of Education School District No. 205
, 111 F.3d 528 (7th Cir. 1997). Throughout this time, beginning with the first interim order, funds to implement remedial programs were raised by real estate taxes levied and bonds issued under the Tort Immunity Act. 

Separate from the aforementioned federal class action, tax objectors challenged the 1991 through 1996 real estate taxes levied by the school district under the Tort Immunity Act to fund the desegregation remedies in the 
federal class action. The school district successfully had the cases removed to federal court. The federal court ruled that the school district had the authority under the Tort Immunity Act to levy taxes to pay for the desegregation remedies. 
In re Application of the County Collector of the County of Winnebago, Illinois, for Judgment & Order of Sale for Taxes on Lands & Lots upon Which the General Taxes &/or Special Assessments for the Year[s] 1991, 1992 & 1993 are Delinquent
, 918 F. Supp. 235 (N.D. Ill. 1996). The Seventh Circuit Court of Appeals reversed on jurisdictional grounds and remanded the matter to the circuit court of Illinois. 
In re Application of County Collector
, 96 F.3d 890 (7th Cir. 1996).

Upon remand from the federal court, the circuit court granted summary judgment in favor of the tax objectors. The circuit court determined that the Tort Immunity Act did not authorize the school district to pay for remedial measures implemented under the second interim order. The circuit court also determined that the Tort Immunity Act did not authorize the school district to pay for desegregation remedies ordered by the federal district court subsequent to the liability determination.

When the school district did not pursue an interlocutory appeal from the circuit court’s ruling, People Who Care was granted leave to intervene. The circuit court then certified the following questions of law for interlocutory appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308):

“(a) Whether the Rockford School District (the ‘District’) was authorized by the Illinois Local Government Employees Tort Immunity Act (‘the Tort Immunity Act’) to levy taxes to fund remedies agreed to by the District and/or ordered by the Federal Court in 
People Who Care v. Rockford Board of Education
 89 C 20168 (‘the 
People Who Care
 case’):

(i) in a 1991 consent decree;

(ii) after the District was adjudicated guilty in 1994 and enjoined generally to provide a comprehensive remedy; and/or

(iii) after a Comprehensive Remedial Order was entered in 1996 and the District was expressly ordered by the Federal Court to use the Tort Immunity Act levy to fund the remedies (including FY 97 remedial programs and Certificates of Participation)[.]

(b) Whether the District was authorized by the Tort Immunity Act to levy taxes to pay the debt service on general obligation bonds issued to fund capital improvement remedies agreed to by the District or ordered by the Federal Court in the 
People Who Care
 case[.]

(c) Whether taxpayers are precluded from challenging any of the aforesaid taxes under principles of 
res judicata
 or collateral estoppel[.]”
(footnote: 1) 

The appellate court initially denied People Who Care’s application for leave to appeal; however, this court issued a supervisory order directing the appellate court to allow the appeal and to answer the certified questions. The appellate court answered certified questions “(a)” and “(b)” in the negative. The appellate court declined to address certified question “(c)” and found it waived because the parties did not brief that question. The appellate court therefore affirmed the circuit court’s rulings that the use of the tax levies under the Tort Immunity Act to fund remedies in the 
People Who Care
 case was not authorized.

ANALYSIS

The issue before this court, as presented in the certified questions, essentially is whether the school district is authorized under the Tort Immunity Act to levy taxes to fund the cost of complying with injunctive remedies. Because this issue involves the interpretation of a statute, which is a question of law, we conduct 
de novo 
review. 
Department of Public Aid ex rel. Davis v. Brewer
, 183 Ill. 2d 540, 554 (1998); 
Lucas v. Lakin
, 175 Ill. 2d 166, 171 (1997).

In construing the meaning of a statute, this court’s primary objective is to ascertain and give effect to the intent of the legislature. The language of the statute provides the best indication of the legislature’s intent. 
Department of Public Aid
, 183 Ill. 2d at 554. We will not depart from the plain language of the statute by reading into it exceptions, limitations or conditions conflicting with the express legislative intent. 
Barnett v. Zion Park District
, 171 Ill. 2d 378, 389 (1996). Moreover, where the statutory language is clear and unambiguous, it will be given effect without resorting to other aids of construction. 
Gem Electronics of Monmouth, Inc. v. Department of Revenue
, 183 Ill. 2d 470, 475 (1998). We also note that statutes imposing a tax are strictly construed against the government and in favor of the taxpayer. 
Gem Electronics
, 183 Ill. 2d at 475. Keeping these principles of statutory construction in mind, we now examine the relevant provisions of the Tort Immunity Act.

Sections 9–107 and 9–102 (745 ILCS 10/9–107, 9–102 (West 1998)) are the two provisions of the Tort Immunity Act directly at issue in this appeal. Both provisions fall under article IX of the Tort Immunity Act, which is entitled “Payment of Claims and Judgment.” 745 ILCS 10/9–101 
et seq
. (West 1998). Section 9–107 authorizes a local public entity to levy taxes upon all taxable property within its territory for purposes of section 9–102. 745 ILCS 10/9–107 (West 1998). Section 9–102 of the Tort Immunity Act in turn empowers a local public entity “to pay any tort judgment or settlement for compensatory damages for which it *** is liable in the manner provided in this Article.” 745 ILCS 10/9–102 (West 1998). It is evident from these provisions that section 9–107 sets forth a tax-levy power and section 9–102 explains the circumstances for utilizing such a tax levy. The issue here is whether section 9–102 provides authority for the school district to levy taxes in this case under section 9–107.

In addressing this issue, we must resolve whether the injunctive remedies in this case constitute “compensatory damages” within the meaning of section 9–102. The term “compensatory damages” is not defined in section 9–102 or anywhere else in the Tort Immunity Act. Accordingly, we rely on the plain and ordinary meaning of the word. See 
In re Estate of Callahan
, 144 Ill. 2d 32, 43 (1991). We also apply a strict construction of the term because it is included in a statute that should be considered a taxing statute given the tax-levy provision in section 9–107. See 
Canteen Corp. v. Department of Revenue
, 123 Ill. 2d 95, 105 (1988).

Compensatory damages are “[d]amages sufficient in amount to indemnify the injured person for the loss suffered.” Black’s Law Dictionary 394 (7th ed. 1999). Damages in turn are “[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury <the plaintiff seeks $8,000 in damages from the defendant>.” Black’s Law Dictionary 393 (7th ed.1999). In light of these definitions, the plain meaning of the term “compensatory damages” is a monetary award paid to a person as compensation for loss or injury. We hold that the use of the term “compensatory damages” in section 9–102 limits application of that provision to the payment of monetary awards in tort judgments or settlements.   People Who Care argues that the term “compensatory damages” is not limited to monetary awards but also includes the costs of complying with injunctive remedies. An injunction, however, is “[a] court order commanding or preventing an action.” Black’s Law Dictionary 788 (7th ed. 1999). “Compensatory damages” clearly differ from an injunction such that injunctive remedies do not constitute “compensatory damages.” Accordingly, section 9–102 does not apply to the payment of costs of complying with injunctive relief.

In support of its argument, People Who Care asserts that this court’s decision in 
Outboard Marine Corp. v. Liberty Mutual Insurance Co
., 154 Ill. 2d 90 (1992), is controlling in determining the definition of “compensatory damages” as used in section 9–102. We disagree.

Outboard Marine
 involved a dispute between an insured and its insurance company regarding the insurance company’s duty to defend the insured against underlying environmental contamination actions brought by governmental agencies. The issue before this court in 
Outboard Marine
 concerned the construction of insurance policies, which required the insurance company to defend “suits against the insured seeking damages.” The court therefore addressed whether the underlying actions against the insured, which sought primarily equitable relief in the form of mandatory injunctions and the costs of complying with the mandatory injunctions, fell within the coverage afforded by the policies so as to trigger a duty to defend.

In construing the insurance policies’ provision regarding “damages,” this court sought to determine the intent of the parties as to the damages covered by the policies. The court noted that, because the policies were comprehensive general liability insurance policies, they were broad types of policies requiring the insurer to assume a wide scope of risks. 
Outboard Marine
, 154 Ill. 2d at 115. In light of the broad nature of the policies, the court then interpreted the term “damages,” which the policies did not define. The court examined Webster’s definition of damages and noted that it contained no distinction between legal compensatory damages or the costs of complying with a mandatory injunction. 
Outboard Marine
, 154 Ill. 2d at 115-16. Rather, damages includes the money required to be expended in order to right a wrong. 
Outboard Marine
, 154 Ill. 2d at 116. The court then determined that, given the broad scope of the comprehensive general liability policies and the dictionary definition of damages, the parties intended the policies to cover liability for property damage regardless of whether liability is equitable or legal in nature. 
Outboard Marine
, 154 Ill. 2d at 117. Consequently, the policies covered costs incurred in complying with injunctive remedies because such costs constituted damages. Therefore, the court held that, under the policies at issue, the underlying actions were suits seeking damages so as to trigger the insurance company’s duty to defend the insured. 
Outboard Marine
, 154 Ill. 2d at 117.

Our decision in 
Outboard Marine
 has no application to this case. Unlike the issue in this case, it did not involve the construction of a taxing statute or the application of the Tort Immunity Act. 
Outboard Marine
 involved the interpretation of insurance policies between contracting parties. Its discussion of damages 
was in the context of broad insurance policies and with respect to the policies’ intended scope of coverage. Our determination in 
Outboard Marine
 that the term “damages” included the costs of complying with a mandatory injunction is therefore not applicable to the interpretation of “compensatory damages” contained in section 9–102 of the Tort Immunity Act. Parenthetically, we note, however, that the court in 
Outboard Marine
 acknowledged the difference between “compensatory damages” and equitable relief by referring to “compensatory damages” separately from the costs of complying with a mandatory injunction. 
Outboard Marine
, 154 Ill. 2d at 115-17.

We note that when construing a statute, a court also considers each provision of the statute in connection with every other section (
Barnett
, 171 Ill. 2d at 388-89), and the purposes to be achieved by the law (
In re Estate of Callahan
, 144 Ill. 2d at 43). For this reason, we examine section 2–101 of the Tort Immunity Act and the purpose underlying the Tort Immunity Act in construing the term “compensatory damages.”

Section 2–101, which is part of article II of the Tort Immunity Act, states in pertinent part that “[n]othing in this Act affects the right to obtain relief other than damages against a local public entity or public employee.” 745 ILCS 10/2–101 (West 1998). The phrase “[n]othing in this Act” indicates that section 2–101 applies to the entire Tort Immunity Act, and that it is not limited to the sections contained in article II, which addresses the scope of immunities. Consequently, section 2–101 provides guidance regarding the relief that may be paid and funded through a tax levy under article IX of the Tort Immunity Act. Moreover, section 2–101 recognizes the distinction between damages and other types of relief. The phrase “relief other than damages” contained therein refers to injunctive relief. See 
Romano v. Village of Glenview
, 277 Ill. App. 3d 406, 410-11 (1995) (determining that, although the injunction in that case may have required the expenditure of money, injunctive relief did not constitute damages under the Tort Immunity Act); 
Anderson v. Sutter
, 119 Ill. App. 3d 1070, 1074-75 (1983) (determining that the Tort Immunity Act does not apply to a suit for an injunction because injunctive relief constitutes relief other than damages under section 2–101). This interpretation is supported by the traditional distinction between damages remedies and injunction remedies. See D. Dobbs, 
Law of Remedies
 §1.1 at 3, 7 (2d ed. 1993) (stating that the damages remedy is a money remedy aimed at making good the plaintiff’s losses, whereas the injunction is a personal command to the defendant to act or to avoid acting in a certain way); Restatement (Second) of Torts §944, at 600 (1979) (noting the adequacy of damages test in determining the appropriateness of an injunction as a remedy)
. Accordingly, we construe section 2–101 as excluding injunctive remedies from the requirements of the Tort Immunity Act.

Our interpretation of section 2–101 as distinguishing between damages and injunction is supported by the purpose for the enactment of the Tort Immunity Act. In 
Molitor v. Kaneland Community Unit District No. 302
, 18 Ill. 2d 11 (1959), the court addressed whether a school district should be immune from tort liability to a plaintiff who sought monetary relief for negligently inflicted personal injury arising from a school bus accident. In resolving this issue, the court examined the doctrine of sovereign immunity, which immunized a governmental unit from tort liability and which had been extended to school districts. The court noted that, under the doctrine of sovereign immunity, local government units had immunity from the “payment of damage claims.” 
Molitor
, 18 Ill. 2d at 16. The court made the following observations regarding sovereign immunity and its focus on the payment of damages:

“It is a basic concept underlying the whole law of torts today that liability follows negligence, and that individuals and corporations are responsible for the negligence of their agents and employees acting in the course of their employment. The doctrine of governmental immunity runs directly counter to that basic concept. What reasons, then, are so impelling as to allow a school district, as a quasi-municipal corporation, to commit wrongdoing without any responsibility to its victims, while any individual or private corporation would be called to task in court for such tortious conduct?

* * *

*** [W]hen viewed in the light of the Illinois School Code, which authorizes appropriations for ‘transportation purposes’ *** [i]t seems to us that the 
payment of damage
 claims incurred as an adjunct to transportation is as much a ‘transportation purpose’ and therefore a proper authorized purpose as are payments of other expenses involved in operating school buses.” (Emphasis added.) 
Molitor
, 18 Ill. 2d at 20-23.

The court ultimately abolished the school district’s immunity from tort liability, which therefore could no longer shield the school district from the plaintiff’s negligence claim for monetary relief. 
Molitor
, 18 Ill. 2d at 25.

In 1965, the legislature responded to the 
Molitor
 decision by enacting the Tort Immunity Act. 1965 Ill. Laws 2983. Evident from the legislature’s response to 
Molitor
 is that the purpose behind the Tort Immunity Act is to subject local governmental units to liability in tort on the same basis as private tortfeasors with the exception for those immunities provided by the Act. See 
Barnett
, 171 Ill. 2d at 386. Further evident from 
Molitor
, which focused on monetary awards, is that, at the time the legislature adopted the Tort Immunity Act, issues of tort liability and tort immunity arose in the context of remedies for damages and not injunctive remedies. The Tort Immunity Act was therefore enacted to deal with damages remedies. Thus, the purpose underlying the Tort Immunity Act and its provisions as a whole reinforce our construction of the term “compensatory damages” as excluding injunctive remedies.

People Who Care contends that legislative debates and recent legislative actions demonstrate that the Tort Immunity Act applies to injunctive relief. Although we need not resort to legislative history to construe a statute whose meaning is plain, we note that this history does not conflict with our interpretation of the Tort Immunity Act. See 
Heck v. Central Illinois Light Co
., 152 Ill. 2d 401, 405-06 (1992) (no rule of construction authorizes a court to declare that the legislature did not mean what the plain language of a statute imports.)

In 1986, the legislature amended section 9–102 to insert the term “compensatory damages.” Pub. Act 84–1431, eff. November 25, 1986 (amending 745 ILCS 10/9–102 (West 1996). This language was added shortly after the Seventh Circuit Court of Appeal’s decision in 
Kolar v. County of Sangamon
, 756 F.2d 564 (7th Cir. 1985), which held that punitive damages could be recovered from the local county under section 9–102 of the Tort Immunity Act. At the time of the 
Kolar
 decision, section 9–102 provided that “[a] local public entity is empowered and directed to pay any tort judgment or settlement” (Ill. Rev. Stat. 1983, ch. 85, par. 9–102).The 
Kolar
 court reasoned that the recovery of punitive damages from the county was allowed because section 9–102 implicitly waived the county’s immunity from punitive damage awards by failing to distinguish between compensatory and punitive damages. 
Kolar
, 756 F.2d at 567. After 
Kolar
, the legislature amended section 9–102 by inserting the term “compensatory damages.” The legislative debates indicate that the legislature was concerned with eliminating the recovery of punitive damages from a local public entity. 84th Ill. Gen. Assem., House Proceedings, June 30, 1986, at 28, 31. Nevertheless, there is no indication in those legislative debates that the term “compensatory damages” was added only to prevent liability for punitive damages. Likewise, there is no indication in the debates that “compensatory damages” was intended to include injunctive remedies.

More recently, there have been failed attempts to amend the Tort Immunity Act to exclude specifically the levying of taxes by a local public entity to fund the costs of complying with equitable remedies or with an injunction. See 90th Ill. Gen. Assem., House Bill 3212, 1998 Sess.; 90th Ill. Gen. Assem., House Bill 863, 1997 Sess.; 90th Ill. Gen. Assem., Senate Bill 562, 1997 Sess.; 89th Ill. Gen. Assem., Senate Bill 649, 1996 Sess. People Who Care argue that these failed attempts show that the legislature intended “compensatory damages” to include the costs of complying with an injunction. We disagree. The debates in the House regarding House Bill 3212 provide some insight into the House’s rejection of that bill. See Legislative Synopsis and Digest, 90th Ill. Gen. Assem., House Bill 3212, 1998 Sess. The following discussion occurred in considering House Bill 3212:

“Winters: ‘*** The House Bill 3212 deals with the Tort Immunity Act and basically, we’re trying to reign in the judiciary where they’re making demands on taxpayers without referendum. This Bill will deal with school districts and only with the lawsuits that deal with equitable remedies. It does not affect the school district and its defense of damage lawsuits. ***’

* * *

Davis, M.: ‘Representative Winters, there was a court case in Rockford and a [federal] judge ruled that what should happen?’

***

Davis, M.: ‘*** [I]f you pass this Bill, Representative Winters, what you’re doing is saying, “you don’t want to abide by the judge’s decision[”] ***.’

Winters: ‘That is incorrect. The school district *** would still have to abide by the judge’s order. They simply would not have access to the Tort Immunity Fund to do that.’

* * *

Pugh: ‘*** I submit to you, once again, that the Tort Immunity Fund is, was designed to be used for actual damages.’

 ***

 ‘*** Not for equitable remedies.’

 * * *

‘... But the judge interprets the law and ***’

***

 ‘*** it is up to the judicial branch of government to interpret the law. So, it is out of our hands ***.’ ” 90th Ill. Gen. Assem., House Proceedings, April 1, 1998, at 233-34, 241-42.

These comments indicate that Representative Pugh opposed the bill not because he believed that section 9–102 involved equitable remedies, but because he would not go against the federal court decision ordering such remedies and their funding under the Tort Immunity Act. Such comments do not reveal any legislative intent that section 9–102 applies to equitable remedies, including injunction or the cost of complying with an injunction. The other mentioned bills are of no assistance in ascertaining legislative intent as espoused by People Who Care. See 
Maiter v. Chicago Board of Education
, 82 Ill. 2d 373, 385 (1980) (noting that the failure of a legislative committee to act favorably on a proposed bill should not be relied upon, in the absence of an indication as to the reason for the failure, to ascertain legislative intent). House Bill 863 received postponed consideration (90th Ill. Gen. Assem., House Proceedings, April 12, 1997, at 65, 74); Senate Bill 562 was referred to committee, where it remained dormant (Legislative Synopsis and Digest, 90th Ill. Gen. Assem., Senate Bill 562, 1997 Sess.); and Senate Bill 649 was referred to committee and then died in session without debate (Legislative Synopsis and Digest, 89th Ill. Gen. Assem., Senate Bill 649, 1996 Sess.).

Finally, People Who Care rely on the policy statement recently included as an amendment to section 9–107. Pub. Act 91–628, eff. January 1, 2000 (amending 745 ILCS 10/9–107 (West  1998)). The policy statement provides:

“(a) The General Assembly finds that the purpose of this Section is to provide an extraordinary tax for funding expenses relating to tort liability, insurance, and risk management programs. Thus, the tax has been excluded from various limitations otherwise applicable to tax levies. Notwithstanding the extraordinary nature of the tax authorized by this Section, however, it has become apparent that some units of local government are using the tax revenue to fund expenses more properly paid from general operating funds. These uses of the revenue are inconsistent with the limited purpose of the tax authorization.

Therefore, the General Assembly declares, as a matter of policy, that (i) the use of the tax revenue authorized by this Section for purposes not expressly authorized under this Act is improper and (ii) the provisions of this Section shall be strictly construed consistent with this declaration and the Act’s express purposes.” 745 ILCS 10/9–107 (West Supp. 1999).

People Who Care insists that this policy statement shows a legislative intent that any expense relating to tort liability, including the expenditure of money for injunctive remedies, should be funded under the Tort Immunity Act. We disagree. The amendment does not broaden the tax-levy power set forth in section 9–107. Rather, it states that the tax-levy power is to be strictly construed and limited to proper purposes. Moreover, although the House debates concerning the policy statement indicate that it was not targeting the injunctive remedies at issue in this case, those debates do not show that such injunctive remedies were in fact considered included within the tax levy set forth in section 9–107. 91st Ill. Gen. Assem., House Proceedings, May 26, 1999, at 3. 

Having interpreted the relevant provisions of the Tort Immunity Act, we now apply that interpretation to the tax levies in this case. 
The remedies at issue clearly involve mandatory injunctive relief and not compensatory damages awarded to the plaintiffs. Because the injunctive relief ordered is not compensatory damages under section 9–102, it cannot be funded under section 9–107. Consequently, the Tort Immunity Act does not authorize the levying of taxes to fund desegregation remedies and to pay the debt service on general obligation bonds.

Before concluding, we note People Who Care’s argument that public policy requires an interpretation of the Tort Immunity Act that authorizes funding for injunctive remedies. It asserts that such an interpretation avoids a disruption of government functions, facilitates prompt vindication of citizen rights, avoids unnecessary interference in state and local government by the federal court, and avoids a waste of public funds. Although these public policy concerns may be valid, they do not override the express legislative intent as set forth in the language of the Tort Immunity Act.

CONCLUSION

For the reasons stated, the Tort Immunity Act does not authorize the school district to levy taxes to fund the injunctive remedies at issue. We therefore agree with the appellate court that certified questions (a) and (b) are answered in the negative. Accordingly, we affirm the judgment of the appellate court.

Affirmed
.

JUSTICE FREEMAN, dissenting:

The issue before the court in this case is whether article IX of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/9–101 
et seq.
 (West 1998)) authorizes the Rockford Board of Education School District No. 205 (school district) to levy taxes and to issue bonds to pay for remedies that a federal court ordered in a school desegregation and educational discrimination case. The majority holds that it does not.

I disagree. The majority misapprehends several fundamental legal concepts pertaining to: (1) judicial remedies generally, and (2) school desegregation remedies specifically. As a result, this court thwarts the voluntary efforts of a local public entity to remedy a grievous constitutional wrong, and invites direct federal judicial intervention in the operation of a local public school district. Accordingly, I dissent.

I. Judicial Remedies Generally

Section 9–102 of the Act authorizes a local public entity, in this case a school district (see 745 ILCS 10/1–206 (West 1998)), “to pay any tort judgment or settlement for compensatory damages for which it *** is liable in the manner provided in this Article.” 745 ILCS 10/9–102 (West 1998). The majority interprets the term “compensatory damages” in section 9–102 of the Act as excluding the cost of complying with injunctive remedies. Invoking the “plain language” rule of statutory interpretation (slip op. at 5), the majority simply refers to a legal dictionary, compares the meaning of “damages” to that of an “injunction,” and states the obvious, 
i.e.
, that the terms have different narrow and technical meanings. The majority then reasons that section 9–102 “does not apply to the payment of costs of complying with injunctive relief.” Slip op. at 6.

The majority’s “plain language” analysis fails. Initially, the majority’s reference to a legal dictionary in search of the “plain and ordinary” meaning of these terms is not dispositive. While this reference yields a rigid distinction between legal damages and equitable relief, a reference to a general dictionary yields a different result. Only eight years ago, this court noted the fluid–and popularly understood–relationship between legal damages and equitable relief. In 
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90 (1992), this court broadly interpreted the term “damages”:

“Webster’s dictionary defines ‘damages’ as ‘the estimated reparation in money for detriment or injury sustained: compensation or satisfaction imposed by law for a wrong or injury caused by a violation of a legal right.’ (Webster’s Third New International Dictionary 571 (1986).) This definition does not distinguish between legal compensatory damages or the costs of complying with a mandatory injunction. It merely indicates that ‘damages’ stands for the money required to be expended in order to right a wrong. To the popular mind, to most people, to ordinary laypersons, ‘damages’ connotes money one must expend to remedy an injury for which he or she is responsible, irrespective of whether that expenditure is compelled by a court of law in the form of compensatory damages or by a court of equity in the form of compliance with mandatory injunctions.” 
Outboard Marine
, 154 Ill. 2d at 115-16.

The majority now attempts to distinguish this court’s proper interpretation of compensatory damages in 
Outboard Marine
 from the narrow and technical interpretation of the same term in this case. The majority reasons that, unlike this case, 
Outboard Marine
 was an insurance coverage case in an environmental cleanup context. Slip op. at 7-8. This distinction fails to persuade me, as it failed to persuade the federal district court in the school desegregation class action. “What makes 
Outboard Marine
 applicable to this case is its reliance on the plain and ordinary definition of damages, which is based on a rule of construction that it equally applicable in the statutory interpretation context. The distinctions, while apparent, are of no difference.” 
In re Application of the County Collector
, 918 F. Supp. 235, 241 n.8 (N.D. Ill. 1996), 
rev’d on other grounds
, 96 F.3d 890 (7th Cir. 1996).

This court has stated that it is reluctant to abandon or modify a recent precedent. “The People and the bar of this State are entitled to rely upon our decisions with assurance that they will not be lightly overruled.” 
Moehle v. Chrysler Motors Corp.
, 93 Ill. 2d 299, 304 (1982). Indeed, the federal district court in this litigation relied upon this court’s interpretation of compensatory damages in 
Outboard Marine
. 
In re Application of the County Collector
, 918 F. Supp. at 240-41. This court does a disservice to anyone who looks to it for a definition of Illinois law when it finds different meanings of “plain language” to reach different results in particular cases.

Reference to a dictionary aside, “common law meanings of words and terms may be assumed to apply in statutes dealing with new or different subject matter, to the extent that they appear fitting and absent evidence indicating a contrary meaning.” 
Advincula v. United Blood Services
, 176 Ill. 2d 1, 17 (1996), citing 2B N. Singer, Sutherland on Statutory Construction §50.03, at 103 (5th ed. 1992).

The rigid distinction that the majority attempts to make between legal damages and equitable relief fades against the backdrop of fundamental common law principles. A court of equity, which has obtained jurisdiction of a cause on any ground, or for any purpose, will retain jurisdiction to administer complete relief and do full justice in the case. The court will do this whether the rights and remedies involved are “legal” or “equitable.” 
McLeod v. Lambdin
, 22 Ill. 2d 232, 236 (1961)(describing principle as “axiomatic”). Accordingly, to afford complete relief, a court of equity may award damages as an adjunct to its equity jurisdiction. See, 
e.g.
, 
Garden City Sand Co. v. Southern Fire Brick & Clay Co.
, 260 Ill. 231, 236-42 (1913)(party may be liable for damages in equity); see generally 27A Am. Jur. 2d 
Equity
 §§103 through 05, 252 (1996); 42 Am. Jur. 2d 
Injunctions
 §§271, 272 (2000); 30A C.J.S. 
Equity
 §§72 through 77 (1992); 21A Ill. L. & Prac. 
Injunctions
 §243 (1977). In other words, a court of equity can issue an “injunction,” 
i.e.
, the court can order the performance of an act. See slip op. at 6, quoting Black’s Law Dictionary 788 (7th ed. 1999). One such act can be the payment of a personal judgment or the recovery of damages. See 27A Am. Jur. 2d 
Equity
 §105, at 591 (1996).

These principles indicate that “injunctive remedies” can greatly resemble “damages.” The majority’s conclusion to the contrary is inaccurate. Slip op. at 6.

II. School Desegregation Remedies

After rigidly and narrowly interpreting the term “compensatory damages” in section 9–102 of the Act, the majority then concludes that the school desegregation remedies in the federal class action “clearly involve mandatory injunctive relief and not compensatory damages awarded to the plaintiffs.” Slip op. at 14. The majority overlooks settled federal law.

A federal injunction can have a substantial ancillary effect on the state treasury. 
Papasan v. Allain
, 478 U.S. 265, 278, 92 L. Ed. 2d 209, 227, 106 S. Ct. 2932, 2940 (1986). Federal courts have ordered state officials to stop violating federal law by refraining from doing particular activities, 
e.g.
, violating civil rights, or specifically, discriminating in schools, “even if it would cost the state some money.” 
Robbins Resource Recovery Partners, L.P. v. Edgar
, 947 F. Supp. 1205, 1210 (N.D. Ill. 1996)(collecting cases).

In the specific context of school desegregation remedies, I agree with the federal district court’s reasoning in this litigation:

“The court also finds that the nature of the remedies sought in the PWC [People Who Care] case are of the type contemplated by the term ‘damages’ in the Tort Immunity Act. While the PWC case may be characterized generally as one of equity seeking mandatory injunctive relief, it is unique in the type of relief it seeks. The essence of the injury alleged in the PWC case is a denial of an education for minority students comparable to that afforded to white students in the district. The commensurate relief sought is an education comparable to that afforded to white students. What was lost was equal education, what is sought is equal education. The People Who Care plaintiffs do not seek purely some action on the part of the school district to prevent future injury, or in other words, the classic prospective relief associated with injunctive actions. Rather, much of what the People Who Care plaintiffs request in their lawsuit is compensation for past wrongs, and for this type of past wrong, direct money compensation to the class plaintiffs is not the appropriate remedy. For the school district’s stock in trade is education. An equal educational opportunity was denied, and that is what ultimately must be provided through monies received by the tax levies.

This notion finds support in 
Milliken v. Bradley
, 433 U.S. 267, 97 S. Ct. 2749, 53 L. Ed. 2d 745 (1977). While addressing a different issue, the United States Supreme Court discussed the nature of the relief sought in a school desegregation lawsuit. [Citation.] *** [T]he Court also recognized the compensatory nature of such relief. In that regard, the Court stated that the fact that ‘the programs are also “compensatory” in nature does not change the fact that they are part of a plan that operates 
prospectively
 to bring about the delayed benefits of a unitary school system.’ 
Id
. at 290, 97 S. Ct. at 2762. (Emphasis in original.)

The court here considers this language from 
Milliken
 to support its characterization of the relief sought in the PWC case. Clearly, the relief requested has components of both traditional injunctive and compensatory relief. It is the significant compensatory aspects of the remedies sought, however, that bring it within the ambit of the Tort Immunity Act’s tax levying provisions.” 
In re Application of the County Collector
, 918 F. Supp. at 242.

The majority misapprehends the nature of school desegregation and educational discrimination remedies.

III. Consequences

In the federal litigation, the school district voluntarily sought to correct a grievous constitutional wrong and to pay for the remedy. This court’s flawed decision thwarts the school district’s voluntary efforts.

Although this court has foiled the school district’s voluntary efforts, the federal district court has retained jurisdiction over the federal class action. As the federal court of appeals has noted in this litigation:

“[I]n certain circumstances, federal courts may order school districts to levy taxes, despite state law limitations on their authority, where the taxes are necessary to remedy constitutional violations. [Citation.] Federal law is supreme, and where a particular remedy is required to vindicate constitutional rights, a state cannot prevent a local government from implementing that remedy.” 
In re Application of the County Collector
, 96 F.3d 890, 904 (7th Cir. 1996).

Today’s decision invites direct federal judicial intervention in the operation of a local public school district.

CONCLUSION

For all of the foregoing reasons, I would reverse the appellate and circuit courts, and hold that the Act authorized the school district to levy taxes to pay for the remedies ordered in the federal class action. Accordingly, I dissent.

FOOTNOTES
1:     
1
The issue presented in certified question (c) is not properly before this court because it has not been briefed by the parties. See 155 Ill. 2d Rs. 341(e)(7), (f).