JOSEPH ROMANO *et al.*, Plaintiffs-Appellants, v. THE VILLAGE OF GLENVIEW, Defendant-Appellee (American National Bank and Trust Company of Chicago, as Trustee, *et al.*, Defendants; The Glenview Park District, Intervening Defendant-Appellee).

First District (2nd Division)    No. 1—94—3578

Opinion filed December 19, 1995.

Smith & Herzog, of Chicago (Marc C. Smith, of counsel), for appellants.

Robbins, Salomon & Patt, Ltd., of Chicago (Richard Lee Stavins and Jeffrey M. Randall, of counsel), for appellee Village of Glenview.

Witwer, Poltrock & Giampietro, of Chicago (Samuel W. Witwer, Jr., and Daniel G. Musca, of counsel), for appellee Glenview Park District.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiffs, homeowners within a subdivision developed by Wedgewood Drive Associates, Ltd. (Wedgewood), initiated an action for injunctive and declaratory relief, seeking to prevent the Village of Glenview (Glenview) from abusing easements granted to it for "underground utilities, water, sewer and drainage easements." The circuit court granted Glenview's motion for judgment on the pleadings, pursuant to section 2—615(e) of the Code of Civil Procedure (735 ILCS 5/2—615(e) (improperly denominated "2—615(b)") (West 1994) (section 2—615(e))). Plaintiffs appeal.

The issues presented are whether (1) Glenview is immune from liability; (2) plaintiffs have standing to contest Glenview's use of the drainage easement; and (3) additional grounds exist to affirm the decision of the circuit court.

Plaintiffs' amended complaint alleged that they are owners of various real estate parcels located in a subdivision in Glenview, adjacent to the Glenview Park District Golf Course (Golf Course). Wedgewood was the developer of the subdivision. Prior to the develop-

ment, the natural flow of surface water went from the development towards the Golf Course. In its subdivision development plan approved by Glenview, Wedgewood granted Glenview easements, at the rear and sides of plaintiffs' properties for "underground utilities, water, sewer and drainage."

During development, Glenview instructed Wedgewood to dig swales on the easements, in order to detain and pond water above ground to a depth of four feet, on plaintiffs' properties. By November 1987, plaintiffs had either signed contracts to purchase their homes or had moved into them. After that time, Glenview and Wedgewood changed the plans for the swales by making them deeper. The deeper swales are alleged to have altered the natural flow of surface water so that water from the development no longer flows onto the Golf Course, but have resulted in erosion and flooding on plaintiffs' properties, as well as safety hazards for the children who reside in the subdivision.

In May 1989, plaintiffs filed an amended complaint, which sought to enjoin defendants from performing additional work on the drainage system, an order that the swales be removed and replaced by underground drainage systems, and an order that the natural flow of the water be restored toward the Golf Course. Plaintiffs also sought a finding that the deepened swales were a misuse of the easements.

The Glenview Park District (Park District) filed a petition to intervene when it discovered that plaintiffs wished to redirect water onto the Golf Course. The petition to intervene was granted.

In September 1989, Glenview answered the amended complaint setting forth the following affirmative defenses: plaintiffs failed to state a cause of action, injunctive relief was not proper, the drainage easements had not been misused, and plaintiffs lacked standing. Plaintiffs did not file a reply to these affirmative defenses.

In February 1994, Glenview moved for judgment on the pleadings pursuant to section 2—615(e) on the grounds that it was immune from liability, plaintiffs lacked standing, and plaintiffs failed to state a cause of action for injunctive relief. The Park District adopted Glenview's motion to dismiss. On June 7, 1994, the circuit court granted the motion for judgment on the pleadings and entered a finding that there was no just reason to delay enforcement or appeal of the order. (See 155 Ill. 2d R. 304(a).) The court denied plaintiffs' motion to vacate the order and to reconsider. Plaintiffs timely filed a notice of appeal.

A motion for judgment on the pleadings admits the truth of all well-pleaded facts in the complaint and challenges only the legal sufficiency of the pleading. (*Bulatovic v. Dobritchanin* (1993), 252 Ill.

App. 3d 122, 127, 625 N.E.2d 26.) The issue raised is whether the challenged portion of the complaint, considered in the light most favorable to plaintiffs, is sufficient to state a claim upon which relief may be granted. *Bulatovic*, 252 Ill. App. 3d at 127.

## I

Plaintiffs assert that the Local Governmental and Governmental Employees Tort Immunity Act (the Act) (Ill. Rev. Stat. 1989, ch. 85, par. 1—101 *et seq.* (now 745 ILCS 10/1—101 *et seq.* (West 1994))) does not prohibit injunction suits against municipalities. The Park District responds that plaintiffs seek a form of damages and, therefore, the case is properly brought within the ambit of the Act.

■ Section 2—101 of the Act provides: "Nothing in this Act affects the right to obtain relief other than damages against a local public entity or public employee." (Ill. Rev. Stat. 1989, ch. 85, par. 2—101 (now 745 ILCS 10/2—101 (West 1994)).) That language of the Act applies only to tort actions and not suits for injunctive relief. *Firestone v. Fritz* (1983), 119 Ill. App. 3d 685, 689, 456 N.E.2d 904; *Anderson v. Sutter* (1983), 119 Ill. App. 3d 1070, 1075, 458 N.E.2d 39 (*Anderson*).

The Park District, citing *United States Fidelity & Guaranty Co. v. Specialty Coatings Co.* (1989), 180 Ill. App. 3d 378, 390-92, 535 N.E.2d 1071, and *Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1991), 212 Ill. App. 3d 231, 239-43, 570 N.E.2d 1154, *aff'd in part & rev'd in part on other grounds* (1992), 154 Ill. 2d 90, 607 N.E.2d 1204, maintains that expenses incurred in modifying portions of land pursuant to an injunctive order qualify as damages. Those cases concerned insurance coverage questions relating to whether response costs and other expenditures incurred in complying with injunctive orders constitute "damages." There, the courts concluded that, in environmental clean-up cases, the expenditure of money under the compulsion of mandatory injunctions constitutes damages for purposes of construing insurance policy language. *Specialty Coatings*, 180 Ill. App. 3d at 392; *Outboard Marine*, 212 Ill. App. 3d at 243.

The Park District recognizes that *Specialty Coatings* and *Outboard Marine* would apply only by analogy. More in point is *Anderson*, where plaintiffs filed suit against a village and certain individual defendants, alleging that a newly constructed dam caused flooding to their land. (*Anderson*, 119 Ill. App. 3d at 1072.) Plaintiffs there sought money damages and an injunction ordering the village to remove the old dam, to reduce the water level of the new dam, and to prevent it from altering either dam. The court held that plaintiffs were not required to give notice to the village, as provided in section

8—102 of the Act (since repealed by Pub. Act 84—1431, art. 1, § 3, eff. November 25, 1986), because injunctive relief did not constitute "damages" under the Act. *Anderson*, 119 Ill. App. 3d at 1074-75.

■ Here, the amended complaint sought an injunctive order that "the swales be removed and replaced by underground drainage systems and/or *** the natural flow of the surface water be restored to flow onto the Glenview Park District Golf Course." Although the injunction in this case may require the expenditure of money by defendants, the same was true in *Anderson*, which held that injunctive relief does not constitute damages under the Act. We agree.

Glenview asserts that it is immune from liability under the common law because plaintiffs have not alleged that its actions were unreasonable, arbitrary, and oppressive.

■ The Act codifies the common law. (*Kennell v. Clayton Township* (1992), 239 Ill. App. 3d 634, 639, 606 N.E.2d 812.) At common law, immunity was extended to local governmental entities engaged in governmental or discretionary functions. (*Kennell*, 239 Ill. App. 3d at 639; see also Ill. Rev. Stat. 1989, ch. 85, par. 2—201 (now 745 ILCS 10/2—201 (West 1994)).) Discretionary acts are those which are unique to the particular public office and involve the exercise of judgment. (*Kennell*, 239 Ill. App. 3d at 639.) Additionally, at common law, the action of the municipality regarding public improvement, a matter confided to its discretion, could not be judicially reviewed and was conclusive unless the court found that the action was so unreasonable, arbitrary, and oppressive as to render it void. (*People ex rel. Lyddy v. City of Rock Island* (1963), 45 Ill. App. 2d 76, 194 N.E.2d 647; *City of Chicago v. The Kehilath Anshe Mayriv* (1918), 284 Ill. 210, 119 N.E. 905.) If there is room for reasonable difference of opinion, the action of the municipality is final. *Kehilath Anshe*, 284 Ill. at 212.

■ The alleged actions that form the basis of liability in this case include Glenview's instructions to the developer to dig swales on plaintiffs' properties which detain and pond water up to a depth of four feet and the alteration of the plans to dig deeper swales subsequent to plaintiffs' having occupied the premises. Paragraph 9 of the amended complaint alleged that Glenview's instruction to Wedgewood to dig deep swales "unreasonably" interfered with their property rights. The term "unreasonable" has been defined as "capricious" and "arbitrary." (Black's Law Dictionary 1538 (6th ed. 1990).) A pleader, whose complaint must be read in the most favorable light, need not set forth all three words in order to meet the pleading requirement here.

Glenview and the Park District are not immune from liability under these alleged facts.

## II

Plaintiffs next assert that the circuit court erred in concluding that they lack standing to challenge Glenview's use of the drainage easements and alteration of the natural flow of surface water. Glenview claims lack of standing, based upon its community-wide concern with this problem.

Glenview cites numerous cases in its brief for the proposition that plaintiffs lack standing to seek injunctive relief; however, in none of those cases was the issue of standing addressed. (See, *e.g.*, *Nichol v. Village of Glen Ellyn* (1967), 89 Ill. App. 2d 251, 231 N.E.2d 462.) The circuit court, in making its oral ruling from the bench that plaintiffs lacked standing, cited *Bluett v. County of Cook* (1958), 19 Ill. App. 2d 172, 153 N.E.2d 305. In *Bluett*, 19 Ill. App. 2d at 175-76, the court also did not address the issue of standing; that case simply involved the determination of whether a zoning ordinance could be superseded by a restrictive covenant on a recorded plat.

■ Glenview correctly asserts that municipalities have substantial authority over the use of utility easements and that easements created by lots may be enforced against the owners of the lots regardless of the annoyance or detriment they create. (See *Village of Fox River Grove v. Aluminum Coil Anodizing Corp.* (1969), 114 Ill. App. 2d 226, 252 N.E.2d 225; *Marlatt v. Peoria Water Works Co.* (1969), 114 Ill. App. 2d 11, 252 N.E.2d 403.) These principles do not support the conclusion that plaintiffs lack standing to seek injunctive relief where it is alleged that the use of easements is unreasonable, however.

■ The doctrine of standing seeks to ensure that courts are deciding actual, specific controversies, and not abstract questions or moot issues. (*In re Marriage of Rodriguez* (1989), 131 Ill. 2d 273, 279-80, 545 N.E.2d 731.) The primary focus of standing is that a party have a real interest in the action brought and in its outcome. (*Rodriguez*, 131 Ill. 2d at 280.) The doctrine is designed to preclude persons having no interest in a controversy from bringing suit; it does not preclude a valid suit from being litigated. (*Rodriguez*, 131 Ill. 2d at 280.) Standing necessitates some injury in fact to a legally cognizable interest, which requires a court to determine whether the requested relief will benefit the party. *Rodriguez*, 131 Ill. 2d at 280.

■ In the case *sub judice*, the amended complaint alleged that the swales created in plaintiffs' yards create unreasonably dangerous conditions for their children, deprive them of the use and enjoyment of their yards, and create erosion in their yards. The relief plaintiffs' seek, the removal of the swales "and/or" the restoration of the natural flow of the surface water, allegedly would resolve their problem. This claimed injury to their property is sufficient to grant plaintiffs

standing in this case. See *Gass v. Metro-East Sanitary District* (1989), 186 Ill. App. 3d 1077, 542 N.E.2d 1229.

The circuit court erred in finding that plaintiffs lack standing.

### III

Glenview and the Park District assert additional grounds for affirming the judgment of the circuit court.

### A

Glenview first argues that the circuit court's ruling was correct because plaintiffs were aware of the easements at the times of purchase and took their properties subject to all benefits and burdens.

■ Easements, restrictions, and reservations appearing on a recorded plat are binding on the proprietors and on all subsequent grantees. (*Marlatt*, 114 Ill. App. 2d at 14.) Although it is true in the case *sub judice* that plaintiffs purchased their properties subject to the easements, plaintiffs alleged that the deepened swales were unreasonable misuses of the easements. Glenview's argument must be rejected.

The Park District suggests that the official Wedgewood engineering site plan filed May 31, 1983, conclusively describes the easements as containing a "detention basin" and makes references to the steepness of the swales; however, a section 2—615 motion attacks only defects apparent on the face of the complaint, and extrinsic evidence cannot be considered. *Barber-Colman Co. v. A&K Midwest Insulation Co.* (1992), 236 Ill. App. 3d 1065, 1068, 603 N.E.2d 1215.

### B

■ Glenview next urges that the issue of enjoining the completion of the drainage system is moot because the drainage system has been completed. Although the drainage system is complete, plaintiffs' petition for an injunctive order also seeks an order that the swales be removed and replaced by underground drainage systems or that the natural flow of the surface water be restored. This issue is not moot.

Glenview, citing the Glenview Subdivision Code, also argues that it had no obligation to construct or modify the drainage system; instead, it claims it was the obligation of the developers. The amended complaint alleged, however, that Glenview instructed the developer to dig deeper swales that detain and pond, in alteration of the original plans for the swales after they had already purchased their properties. These well-pled facts must be accepted as true. The amended complaint adequately alleged actions by Glenview that continue to cause damage to their land.

## C

Lastly, Glenview submits that the circuit court's ruling is correct because plaintiffs' failure to file a reply to its affirmative defenses constitutes admissions of the truth of those allegations.

In September 1989, Glenview filed an answer to the amended complaint in which it set forth the following affirmative defenses: plaintiffs failed to state a cause of action, injunctive relief was not proper, the drainage easements had not been misused, and plaintiffs lacked standing. Plaintiffs did not file a reply to these affirmative defenses.

Failure of a party to reply to new matters raised by way of affirmative defense constitutes an admission of those allegations. (*Sobel v. Franks* (1994), 261 Ill. App. 3d 670, 680, 633 N.E.2d 820.) Here, Glenview points to no factual allegations in its affirmative defenses or new matters which would permit the circuit court to conclude that plaintiffs' failure to reply admitted such facts in derogation of plaintiffs' claims. 735 ILCS 5/2—613(d) (West 1994); *Andrews v. Cramer* (1993), 256 Ill. App. 3d 766, 769-70, 629 N.E.2d 133.

There are no grounds presented upon which to affirm the decision of the circuit court. Accordingly, the cause is reversed and remanded for further proceedings.

Reversed and remanded with directions.

SCARIANO, P.J., and BURKE, J., concur.