(No. 90527.—

M.A.K., Appellee, v. RUSH-PRESBYTERIAN-ST. LUKE'S MEDICAL CENTER, d/b/a Rush Behavioral Health Center—Du Page, Appellant.

*Opinion filed December 20, 2001.*

FREEMAN, J., specially concurring.
KILBRIDE, J., dissenting.

George F. Galland, Jr., and Jeffrey I. Cummings, of Miner, Barnhill & Galland, of Chicago, for appellant.

Herbolsheimer, Lannon, Henson, Duncan & Reagan, P.C., of La Salle (T. Donald Henson and Lawrence M. Kaschak, of counsel), for appellee.

Thaddeus J. Nodzenski and Mark D. Deaton, of Naperville, for *amicus curiae* Illinois Hospital & Healthsystems Association.

JUSTICE GARMAN delivered the opinion of the court:

Plaintiff, M.A.K., filed a complaint in the circuit court of Will County against defendants, Rush-Presbyterian-St. Luke's Medical Center (Rush) and Royal Maccabees Life Insurance Company (Royal), alleging that Rush had improperly released certain medical records to Royal, pursuant to a written consent signed by plaintiff. The circuit court granted judgment on the pleadings to Rush. Thereafter, plaintiff voluntarily dismissed his action as to Royal and appealed the circuit court's order. The appellate court reversed and remanded (316 Ill. App. 3d 156). We granted Rush's petition for leave to appeal (177 Ill. 2d R. 315) and we now reverse the judgment of the appellate court.

## BACKGROUND

In count I of his second amended complaint, plaintiff alleged that Rush had breached the physician-patient relationship by releasing his records without first advising plaintiff of its intention to do so and obtaining his approval. In count II, for invasion of privacy, plaintiff alleged that Rush had wrongfully released his medical records without his prior authorization or consultation. Count III alleged negligent infliction of emotional distress.

The allegations of the complaint show that on January 13, 1995, plaintiff was admitted to Rush's Behavioral Health Center—Du Page (Behavioral Health Center) for alcohol dependence. He was discharged on March 2, 1995. In October 1994, plaintiff had applied to Royal for a disability income insurance policy. Royal issued the policy. While receiving treatment at Rush, plaintiff contacted his insurance agent about filing a claim for benefits under the policy. After receiving a claim form from Royal, plaintiff notified Royal in February 1995 that he would not be filing a claim. In April 1995, Rush received from Royal a written consent signed by plaintiff, dated October 12, 1994, to release plaintiff's medical and nonmedical information to Royal. The records that Rush released to Royal included plaintiff's records of alcohol-dependence treatment. After receiving plaintiff's medical records from Rush, Royal cancelled plaintiff's disability policy.

The written consent signed by plaintiff was entitled "AUTHORIZATION AND ACKNOWLEDGEMENT" (hereafter authorization) and stated in pertinent part as follows:

"I AUTHORIZE any physician, medical practitioner, hospital, clinic, health care facility, [or] other medical or medically related facility[ ] *** having information available as to diagnosis, treatment and prognosis with respect to any physical or mental condition and/or treatment of me *** and any other non-medical information of me *** to give to Royal *** any and all such information.

I UNDERSTAND the purpose of this authorization is to allow Royal *** to determine eligibility for life or health insurance or a claim for benefits under a life or health policy. ***

I UNDERSTAND THAT my *** medical records may be protected by certain Federal Regulations, especially as they apply to any drug or alcohol abuse data. I understand that I *** may revoke this authorization at any time as it pertains to any such drug or alcohol abuse data by written notification ***.

* * *

*** I AGREE this Authorization shall be valid for two and one half years from [October 12, 1994]."

In the circuit court, Rush filed a motion for judgment on the pleadings (735 ILCS 5/2—615(e) (West 1998)), arguing that plaintiff's executed authorization expressly permitted Rush to release his medical and nonmedical records to Royal and was therefore facially valid. Plaintiff argued that the authorization was not a valid waiver of his right to confidentiality of his medical records that were not in existence at the time he signed the authorization and that Rush should have notified plaintiff that Royal had submitted a request for his medical records. Plaintiff also filed a reply to Rush's reply brief in support of its motion for judgment on the pleadings in which plaintiff included an affidavit of his attorney, who stated that, during a meeting with Paul Feldman, the medical director of the Behavioral Health Center, Feldman admitted that plaintiff's records should not have been released to Royal. On December 11, 1997, the circuit court granted Rush's motion.

The issue addressed by the appellate court was whether the authorization complied with the requirement of section 2.31(a)(1) of the Confidentiality of Alcohol and Drug Abuse Patient Records regulations (hereafter regulation). Confidentiality of Alcohol and Drug Abuse Patient Records, 42 C.F.R. § 2.31(a)(1) (2000). The regulation requires that a written consent for release of alcohol and drug treatment records give the "specific name or general designation" of the person or program authorized to make the disclosure of such records. In reversing the circuit court, the appellate court relied upon the "plain language" of the authorization and concluded that the term "general designation" required something more specific than the phrase "any physician, medical practitioner, hospital, clinic, health care facility or other medical or medically related facili-

ty." The court described the language of the authorization as "at best imprecise and far too generic to be considered a general designation as that term is commonly understood and as is required by the regulations." 316 Ill. App. 3d at 160.

## ANALYSIS

### I. Standard of Review

Judgment on the pleadings is proper only where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Chicago Title & Trust Co. v. Steinitz*, 288 Ill. App. 3d 926, 934 (1997). In ruling on a motion for judgment on the pleadings, only those facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record may be considered. All well-pleaded facts and all reasonable inferences from those facts are taken as true. *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 115 (1995). Our review is *de novo*. *Board of Trustees of the University of Illinois v. City of Chicago*, 317 Ill. App. 3d 569, 571 (2000).

### II. Compliance With the Regulation

The regulation implements section 543 of the Public Health Service Act (Public Health Act) (42 U.S.C. § 290dd—2 (1994)). That section mandates the confidentiality of alcohol and drug abuse patient records and prescribes the conditions and manner of release of such records. It states in pertinent part as follows:

"(a) Requirement

Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any depart-

ment or agency of the United States shall, except as provided in subsection (e) of this section, be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section.

(b) Permitted disclosure

(1) Consent

The content of any record referred to in subsection (a) of this section may be disclosed in accordance with the prior written consent of the patient with respect to whom such record is maintained, but only to such extent, under such circumstances, and for such purposes as may be allowed under regulations prescribed pursuant to subsection (g) of this section." 42 U.S.C. §§ 290dd—2(a), (b) (1994).

Subsection (g) grants authority to the Department of Health and Human Services (Department) to promulgate regulations to implement the purposes of the law. 42 U.S.C. § 290dd—2(g) (1994). The regulation sets forth the requirements of a written consent authorizing disclosure of a patient's alcohol or drug abuse treatment records. That section provides in pertinent part:

"(a) Required elements. A written consent to a disclosure under these regulations must include:

(1) The specific name or general designation of the program or person permitted to make the disclosure.

(2) The name or title of the individual or the name of the organization to which disclosure is to be made.

(3) The name of the patient.

(4) The purpose of the disclosure.

(5) How much and what kind of information is to be disclosed.

(6) The signature of the patient ***.

(7) The date on which the consent is signed.

(8) A statement that the consent is subject to revocation at any time except to the extent that the program or person which is to make the disclosure has already acted in reliance on it. ***

(9) The date, event, or condition upon which the consent will expire if not revoked before. This date, event, or condition must insure that the consent will last no longer than

reasonably necessary to serve the purpose for which it is given." 42 C.F.R. § 2.31(a) (2000).

Familiar principles of statutory construction apply to the interpretation of regulations of an administrative agency. See *Tivoli Enterprises, Inc. v. Zehnder*, 297 Ill. App. 3d 125, 132 (1998). The primary rule of statutory construction is to give effect to the intent of the legislature. *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997). The best evidence of legislative intent is the language used in the statute itself and that language must be given its plain and ordinary meaning. *Paris*, 179 Ill. 2d at 177. The statute should be construed as a whole and, if possible, in a manner such that no term is rendered meaningless or superfluous. *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 270 (1998). Where the meaning of a statute is unclear from a reading of its language, courts may look beyond the language of the statute and consider the purpose of the law, the evils it was intended to remedy, and the legislative history behind it. *In re B.C.*, 176 Ill. 2d 536, 542-43 (1997).

The phrase "general designation" is not defined in the regulation. The word "general" means "involving, applicable to, or affecting the whole," "involving, relating to, or applicable to every member of a class, kind, or group," and "concerned or dealing with universal rather than particular aspects". Merriam-Webster's Collegiate Dictionary 484 (10th ed. 1996). "[D]esignation" is defined as "the act of indicating or identifying," and "a distinguishing name, sign, or title." Merriam-Webster's Collegiate Dictionary 313 (10th ed. 1996).

Rush argues that the phrase "general designation" is properly construed to mean "a broad and comprehensive classification of the programs and persons permitted to make disclosure" of the patient's confidential records. Since the terms "physician, medical practitioner, hospital, clinic, health care facility, and other medical or medically related facility" constitute such a classification, their use

in the authorization complied with the regulation. Plaintiff, on the other hand, argues that the phrase requires the authorization to contain a reference to records of treatment in an alcohol abuse program.

As the appellate court recognized, this is an issue of first impression. We have been unable to locate any case that has addressed the question before us.

On its face, the phrase "general designation" appears to be vague. The word "general" refers to a broad classification. The word "designation" refers to either the act of identifying or a distinguishing name or title. It is unclear how to reconcile these words. We will therefore look beyond the language of the regulation to determine the meaning of the phrase "general designation."

The original authority for the regulation derives from section 333 of the Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment, and Rehabilitation Act of 1970 (Alcohol Abuse Act) (42 U.S.C. § 4582 (1982)). That section is now section 543 of the Public Health Act (42 U.S.C. § 290dd—3 (1994)). Congress recognized that, without guarantees of confidentiality, many individuals would hesitate to seek treatment in alcohol and drug abuse programs. *Whyte v. Connecticut Mutual Life Insurance Co.*, 818 F.2d 1005, 1010 (1st Cir. 1987). The purpose of enacting the Alcohol Abuse Act was to facilitate the work of alcohol and drug treatment centers by assuring the confidentiality of patient records. *United States v. Eide*, 875 F.2d 1429, 1436 (9th Cir. 1989). The regulation was originally promulgated in 1975. 40 Fed. Reg. 27802 (1975). Until 1987, the regulation provided that a written consent to a disclosure of a patient's alcohol or drug treatment records must include the *name of the program* which was to make the disclosure. 42 C.F.R. § 2.31(a)(1) (2000). The regulation was amended in 1987 to its current form. In its comments explaining the 1987 amendments the Department noted that:

"The Final Rule retains all elements previously required for written consent, though in one instance it will permit a more general description of the required information. The first of the required elements of written consent in both the existing and proposed rule ([section] 2.31(a) (1)) asks for the name of the program which is to make the disclosure. The Final Rule will amend that element by calling for '(1) The specific name or general designation of the program or person permitted to make the disclosure.' This change will permit a patient to consent to disclosure from a category of facilities or from a single specified program. For example, a patient who chooses to authorize disclosure of all his or her records without the necessity of completing multiple consent forms or individually designating each program on a single consent form would consent to disclosure from all programs in which the patient has been enrolled as an alcohol or drug abuse patient. Or, a patient might narrow the scope of his or her consent to disclosure by permitting disclosure from all programs located in a specified city, from all programs operated by a named organization, or as now, the patient might limit consent to disclosure from a single named facility. (In this connection, the Department interprets the existing written consent requirements to permit consent to disclosure of information from many programs in one consent form by listing specifically each of those programs on the form.)

This change generalizes the consent form with respect to only one element without diminishing the potential for a patient's making an informed consent to disclose patient identifying information. The patient is in [a] position to be informed of any programs in which he or she was previously enrolled and from which he or she is willing to have information disclosed." Confidentiality of Alcohol and Drug Abuse Patient Records, 52 Fed. Reg. 21,796, 21,799 (June 9, 1987).

After careful consideration, we conclude that the authorization signed by plaintiff in this case complies with section 2.31(a)(1) of the regulation. Prior to the 1987 amendments, the regulation required a written consent to give the specific name of the program or person permitted to make the disclosure. The intent of the

amendments was to broaden the permissible wording of a written consent to disclosure of alcohol and drug treatment records. The amended regulation permits a more general description of the person or program to make the disclosure. This relaxed requirement serves the amendments' stated purpose of relieving patients of the necessity of executing multiple consent forms or specifically naming each and every program or person entitled to make disclosure of alcohol or drug treatment records. The appellate court's interpretation of the phrase "general designation" gives too much emphasis to the word "designation." In doing so, the court essentially read the word "general" out of the phrase. Construing the regulation in this manner undermines the intent of the 1987 amendments. The authorization here gives a general classification of the types of entities that are entitled to disclose plaintiff's medical and nonmedical information. That is all the regulation requires.

We note that plaintiff does not argue that he failed to understand that alcohol treatment records could be disclosed pursuant to the authorization. Indeed, language in the authorization specifically refers to alcohol and drug abuse treatment records, advising plaintiff that such records may be protected by federal regulations and that he may revoke the authorization at any time as it pertains to such records. We therefore conclude that the appellate court erred in finding the authorization invalid under section 2.31(a)(1) of the regulation.

### III. Issues Raised by Plaintiff

In his appellee brief, plaintiff raises additional arguments in support of the appellate court's decision. He argues that the authorization failed to comply with two additional elements of the regulation. The regulation requires a written consent for release of alcohol or drug treatment records to state how much and what kind of information is to be disclosed. 42 C.F.R. § 2.31(a)(5)

(2000). It also requires a written consent to state "[t]he date, event, or condition upon which the consent will expire if not revoked before. This date, event, or condition must insure that the consent will last no longer than reasonably necessary to serve the purpose for which it is given." 42 C.F.R. § 2.31(a)(9) (2000). The authorization states that "any and all" of plaintiff's medical and nonmedical information may be released. It also states that the consent to disclosure will expire $2^1/2$ years from October 12, 1994.

Plaintiff also argues that, even should we decide that the authorization is valid, this cause should be remanded to the circuit court to resolve issues of fact concerning whether Rush violated its own policies and procedures in releasing plaintiff's records. In this argument, plaintiff relies on the alleged statement by Paul Feldman, the Behavioral Health Center's medical director, that Rush should not have released plaintiff's records.

Finally, plaintiff argues that, as a matter of law, the authorization was not applicable to medical records not in existence at the time he signed it.

Rush contends that plaintiff did not raise these arguments in the circuit or appellate courts. It is not clear from the record that all of these arguments are waived. After concluding that the authorization failed to comply with the "general designation" requirement of the regulation, the appellate court chose not to address other arguments of the parties. The opinion does not indicate what those arguments were. In addition, we note that plaintiff argued in the circuit court that the authorization did not waive his right to confidentiality of his medical records generated after he signed the authorization. Regardless, the waiver rule is a limitation on the parties and not the jurisdiction of this court. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 518 (2000). Under the circumstances, we choose to address plaintiff's arguments.

### A. *Other Requirements of the Regulation*

Plaintiff argues that the authorization fails to specify how much and what kind of information is to be disclosed, as required by the regulation. The authorization states that it applies to "any and all such information," *i.e.*, all medical and nonmedical information possessed by the entities to make the disclosure. Plaintiff apparently complains that the authorization's description of this information is too broad. He cites, as his sole authority for this argument, a publication entitled, "Checklist for Monitoring Alcohol and Other Drug Confidentiality Compliance." Department of Health and Human Services Publication No. 18 (SMA) 96—3083 (1996). This publication was published pursuant to a contract from the Center for Substance Abuse Treatment (Center) of the Substance Abuse and Mental Health Services Administration, an agency of the Department, as part of its Technical Assistance Publication Series. The publication that plaintiff refers to is Technical Assistance Publication 18 and it purports to provide a checklist to assist alcohol and other drug programs and state and other governmental monitoring agencies in determining whether a breach of patient confidentiality has occurred under federal law and regulations governing patient confidentiality.

With regard to section 2.31(a)(5) of the regulation, this publication states that the information to be released "should be described as exactly and narrowly as possible in light of the purpose of the release. Releases for 'any and all pertinent information' are not valid." Department of Health and Human Services Publication No. 18 (SMA) 96—3083, Checklist, pt. A(III)(A), Summary of the Rule.

Plaintiff's reliance on this publication is misplaced, because it explicitly states that "[t]he opinions expressed herein are the views of the authors and do not necessarily reflect the official position of [the Center] or any other part of the [Department]." Department of Health and

Human Services Publication No. 18 (SMA) 96—3083, Introduction. Thus, it provides no authority for plaintiff's contention that the authorization's description of the kind and amount of information to be released violates the regulation. There is no indication in the regulation or in the Department's comments to the 1987 amendments that a broad description of the information to be released is impermissible.

Plaintiff also argues that the authorization does not comply with section 2.31(a)(9) of the regulation, governing the terms under which a written consent to disclosure is to expire. Plaintiff asserts that the authorization's statement that it is valid for 2¹/₂ years from October 12, 1994, goes "substantially" beyond the time reasonably necessary to serve the purpose for which the authorization was given. In support of this argument, plaintiff cites a footnote in another Technical Assistance Publication, entitled, "Confidentiality of Patient Records for Alcohol and Other Drug Treatment," which notes that some states have statutes that provide for the automatic expiration of written consents after 60 or 90 days. Department of Health and Human Services Publication No. 13 (SMA) 95—3018 (1994), ch. 1 n.11. As with the prior publication cited by plaintiff, this latter publication expressly represents only the views of its author. It provides no support for plaintiff's argument. The authorization here complied with the regulation by stating the date upon which it would cease to be valid. The stated purpose for the authorization was to enable Royal to determine plaintiff's eligibility for insurance and to evaluate any claims made by plaintiff under his insurance policy. We cannot say as a matter of law that a period of 2¹/₂ years for the purpose of evaluating any claims plaintiff might make under the insurance policy is invalid.

## B. *Alleged Violation of Rush's Policies in Disclosing Records*

Plaintiff argues that this cause should be remanded for a determination of whether Rush violated its own policies and procedures in disclosing plaintiff's records. Plaintiff relies on an affidavit of his attorney referring to comments made by Feldman during a meeting, stating that Rush should not have released the records. Plaintiff notes that Rush did not challenge the affidavit, which was attached to a reply to Rush's reply to plaintiff's response to Rush's motion for judgment on the pleadings.

Plaintiff's reliance on this affidavit is misplaced. In ruling upon a motion for judgment on the pleadings, a court may consider only (1) facts apparent from the face of the pleadings, (2) matters subject to judicial notice, and (3) judicial admissions in the record. *Mt. Zion State Bank & Trust*, 169 Ill. 2d at 115. Extrinsic evidence may not be considered. *Romano v. Village of Glenview*, 277 Ill. App. 3d 406, 413 (1995). Accordingly, the affidavit of plaintiff's attorney is irrelevant.

## C. *Validity of Authorization as to Subsequently Generated Records*

Plaintiff argues that, as a matter of Illinois law, the authorization was not valid to waive his right to confidentiality of his medical records that were not in existence on the date he signed it. In support, he cites section 8—2001 of the Code (735 ILCS 5/8—2001 (West 1998)), which requires hospitals to permit patients, after their discharge from the hospital, to examine and copy their records. Plaintiff argues that the fact that the right under this statute to examine and copy records accrues after discharge from a hospital implies that a consent for release of hospital records applies only to records in existence at the time the patient signs the consent. Plaintiff cites no authority supporting his interpretation of this statute. Section 8—2001 of the Code merely allows

patients access to their hospital records upon discharge. Nothing in the statute implies that patients may not authorize disclosure of treatment records that may be generated in the future.

Plaintiff next argues that, since he did not know at the time he signed the authorization that he would be hospitalized in the future for alcohol abuse treatment, he could not, by signing the authorization, have waived his right to nondisclosure of his records. Thus, without notice from Rush to plaintiff of Royal's request for his records, he could not have exercised his right to revoke the authorization. In support of his argument, plaintiff cites an Arizona case, *Danielson v. Superior Court,* 157 Ariz. 41, 754 P.2d 1145 (App. 1987). That case, however, is inapposite, as it involved a situation in which a physician disclosed his alcohol treatment records to a state investigatory agency and later sought to prevent disclosure of those records in a medical malpractice lawsuit. The appellate court held that the physician had no right to withhold the records from the agency and that, in such cases, a voluntary disclosure cannot be considered a waiver of the right to invoke the confidentiality privilege in the future. *Danielson,* 157 Ariz. at 48, 754 P.2d at 1152. In the instant case, plaintiff had the right not to sign the authorization and he maintained the right to revoke it at any time. Plaintiff points to no authority for the proposition that he could not waive his confidentiality privilege as to subsequently generated medical records and we reject his argument.

## CONCLUSION

We hold that the circuit court did not err in entering judgment on the pleadings in favor of Rush. We therefore reverse the appellate court's judgment and affirm that of the circuit court.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE FREEMAN, specially concurring:

The majority holds that an authorization for release of medical records executed by plaintiff, M.A.K., in favor of plaintiff's insurance carrier, Royal Maccabees Life Insurance (Royal Insurance), is valid. Consequently, defendant, Rush-Presbyterian-St. Luke's Medical Center (Rush-Presbyterian), is not liable to plaintiff for the release of plaintiff's medical records to Royal Insurance. I strongly disagree with the majority's conclusion that the authorization is valid. The authorization does not comply with federal regulations concerning the release of alcohol- or drug-abuse treatment records. However, I join in the result reached by the majority because I believe plaintiff cannot maintain a private damages action where such action is grounded upon a violation of the federal regulations.

## BACKGROUND

In October 1994, plaintiff applied for a disability insurance policy with Royal Insurance. In connection with the application, plaintiff executed an authorization for release of medical records. Plaintiff thereby authorized any "physician, medical practitioner, hospital, clinic, health care facility [or] other medical or medically related facility *** having information available as to diagnosis, treatment and prognosis with respect to any physical or mental condition and/or treatment" to release such information to Royal Insurance. The purpose of the authorization was to allow Royal Insurance "to determine eligibility for life or health insurance or a claim for benefits under a life or health policy." Plaintiff agreed that the authorization would be valid for 2½ years from October 12, 1994.

On January 13, 1995, plaintiff was admitted to Rush-Presbyterian's Behavioral Health Center—Du Page (Behavioral Health Center) for alcohol dependence. Plaintiff was released from the program on March 2,

1995. Plaintiff considered filing a claim with Royal Insurance for the treatment he received at the Behavioral Health Center. He contacted his insurance agent and requested a claim form. However, plaintiff later determined not to file a claim, and so informed Royal Insurance.

In April 1995, Royal Insurance forwarded a copy of the authorization to Rush-Presbyterian and requested the release of plaintiff's medical records. Rush-Presbyterian released plaintiff's records to Royal Insurance, including records of plaintiff's treatment for alcohol dependence. The records contained a notation that the onset of plaintiff's alcohol dependence took place eight months prior to his admission to the Behavioral Health Center. Royal Insurance cancelled plaintiff's policy and refunded his premiums.

Plaintiff filed suit against Rush-Presbyterian and Royal Insurance. Plaintiff alleged that Rush-Presbyterian breached the physician-patient relationship by releasing his records without first advising plaintiff that it intended to do so. Plaintiff also sought damages for breach of privacy and negligent infliction of emotional distress. The trial court entered judgment on the pleadings in favor of Rush-Presbyterian.

## ANALYSIS

### A. General Designation

In enacting the Alcoholism and Other Drug Abuse and Dependency Act (the Illinois Act) (20 ILCS 301/1—1 *et seq.* (West 1994)), the Illinois legislature recognized the ills attendant to drug and alcohol abuse and the need for coordinated efforts in treatment and rehabilitation:

> "Legislative Declaration. The abuse and misuse of alcohol and other drugs constitutes a serious public health problem the effects of which on public safety and the criminal justice system cause serious social and economic losses, as well as great human suffering. It is imperative that a

comprehensive and coordinated strategy be developed under the leadership of a State agency and implemented through the facilities of federal and local government and community-based agencies *** to empower individuals and communities through local prevention efforts and to provide intervention, treatment, rehabilitation and other services to those who misuse alcohol or other drugs *** to lead healthy and drug-free lives and become productive citizens in the community." 20 ILCS 301/1—5 (West 1994). A key provision in the treatment of alcohol and drug abuse is maintaining the confidentiality of the patient's records. To that end, section 30—5 of the Illinois Act provides in part,

"(bb) Records of the identity, diagnosis, prognosis or treatment of any patient maintained in connection with the performance of any program or activity relating to alcohol or other drug abuse or dependency education, early intervention, intervention, training, treatment or rehabilitation which is regulated, authorized, or directly or indirectly assisted by any Department or agency of this State or under any provision of this Act shall be confidential and may be disclosed only in accordance with the provisions of federal law and regulations concerning the confidentiality of alcohol and drug abuse patient records as contained in 42 U.S.C. Sections 290dd—3 and 290ee—3 and 42 C.F.R. Part 2." 20 ILCS 301/30—5(bb) (West 1994). Section 30—5 lists certain exemptions to the confidentiality requirement not applicable here. 20 ILCS 301/30—5(bb)(1) (West 1994). Section 30—5 also provides that, if the information at issue is not exempt, a disclosure can be made only

"(A) with patient consent as set forth in 42 C.F.R. Sections 2.1(b)(1) and 2.31, and as consistent with pertinent State law.

(B) for medical emergencies as set forth in 42 C.F.R. Sections 2.1(b)(2) and 2.51.

(C) for research activities as set forth in 42 C.F.R. Sections 2.1(b)(2) and 2.52.

(D) for audit evaluation activities as set forth in 42 C.F.R. Section 2.53.

(E) with a court order as set forth in 42 C.F.R. Sections 2.61 through 2.67." 20 ILCS 301/30—5(bb)(2) (West 1994). Lastly, section 30—5 provides that "[a]ny person who discloses the content of any record referred to in this Section except as authorized shall, upon conviction, be guilty of a Class A misdemeanor." 20 ILCS 301/30—5(bb)(5) (West 1994).

As noted in the provisions cited above, the Illinois Act specifically and extensively refers to the federal law and regulations concerning alcohol- and drug-abuse treatment. Looking to federal law, the Public Health Service Act (the federal Act) (42 U.S.C. § 201 *et seq.* (1994)) protects the confidentiality of records of "the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States." 42 U.S.C. § 290dd—2 (1994), formerly 42 U.S.C. § 290ee—3 (1988). Such records may be disclosed "in accordance with the prior written consent of the patient with respect to whom such record is maintained, but only to such extent, under such circumstances, and for such purposes as may be allowed under regulations prescribed pursuant to subsection (g) of this section." 42 U.S.C. § 290dd—2(b)(1) (1994).

The regulations prescribed for the disclosure of a patient's alcohol- or drug-abuse treatment records require that the written consent include "[t]he specific name or general designation of the program or person permitted to make the disclosure." 42 C.F.R. § 2.31(a)(1) (2000). The written consent must also include "[t]he date, event, or condition upon which the consent will expire if not revoked before. This date, event, or condition must insure that the consent will last no longer than

reasonably necessary to serve the purpose for which it is given." 42 C.F.R. § 2.31(a)(9) (2000).

In the present case, plaintiff authorized any "physician, medical practitioner, hospital, clinic, health care facility [or] other medical or medically related facility *** having information available as to diagnosis, treatment and prognosis with respect to any physical or mental condition and/or treatment" to release such information to Royal Insurance. The majority finds this authorization complied with the requirement of the federal regulations that a written consent include "[t]he specific name or general designation of the program or person permitted to make the disclosure." 42 C.F.R. § 2.31(a)(1) (2000).

Initially, the majority refers to Merriam-Webster's Collegiate Dictionary for definitions of the words "general" and "designation." The majority notes that the word " 'general' " means " 'involving, applicable to, or affecting the whole,' " " 'involving, relating to, or applicable to every member of a class, kind, or group.' " 198 Ill. 2d at 257, quoting Merriam-Webster's Collegiate Dictionary 484 (10th ed. 1996). Also, the majority notes that the word "designation" is defined as " 'the act of indicating or identifying,' " and " 'a distinguishing name, sign, or title.' " 198 Ill. 2d at 257, quoting Merriam-Webster's Collegiate Dictionary 313 (10th ed. 1996). The majority concludes,

> "On its face, the phrase 'general designation' appears to be vague. The word 'general' refers to a broad classification. The word 'designation' refers to either the act of identifying or a distinguishing name or title. It is unclear how to reconcile these words. We will therefore look beyond the language of the regulation to determine the meaning of the phrase 'general designation.' " 198 Ill. 2d at 258.

The majority next refers to the 1987 amendments to the federal regulations governing written consents. 40 C.F.R. § 2.31 (2000). Prior to 1987, the regulations

required that a written consent include the name of the program which was to make the disclosure. The regulations, as amended, require that the written consent include "[t]he specific name or general designation of the program or person permitted to make the disclosure." The comments to the amendments explain,

" 'This change will permit a patient to consent to disclosure from a category of facilities or from a single specified program. For example, a patient who chooses to authorize disclosure of all his or her records without the necessity of completing multiple consent forms or individually designating each program on a single consent form would consent to disclosure from all programs in which the patient has been enrolled as an alcohol or drug abuse patient. Or, a patient might narrow the scope of his or her consent to disclosure by permitting disclosure from all programs located in a specified city, from all programs operated by a named organization, or as now, the patient might limit consent to disclosure from a single named facility. ***

This change generalizes the consent form with respect to only one element without diminishing the potential for a patient's making an informed consent to disclose patient identifying information. The patient is in [a] position to be informed of any programs in which he or she was previously enrolled and from which he or she is willing to have information disclosed.' " 198 Ill. 2d at 259, quoting Confidentiality of Alcohol and Drug Abuse Patient Records, 52 Fed. Reg. 21,796, 21,799 (June 9, 1987).

In light of these comments, the majority concludes,

"The intent of the amendments was to broaden the permissible wording of a written consent to disclosure of alcohol and drug treatment records. The amended regulation permits a more general description of the person or program to make the disclosure. This relaxed requirement serves the amendments' stated purpose of relieving patients of the necessity of executing multiple consent forms or specifically naming each and every program or person entitled to make disclosure of alcohol or drug treatment records. The appellate court's interpretation of the phrase 'general designation' gives too much emphasis to

the word 'designation.' In doing so, the court essentially read the word 'general' out of the phrase. Construing the regulation in this manner undermines the intent of the 1987 amendments. The authorization here gives a general classification of the types of entities that are entitled to disclose plaintiff's medical and nonmedical information. That is all the regulation requires." 198 Ill. 2d at 259-60.

The majority fails to consider, however, that the phrase "general designation" is used in conjunction with the word "program." The regulations require that the written consent include "[t]he specific name or general designation of the *program*" permitted to make the disclosure. (Emphasis added.) 42 C.F.R. § 2.31 (2000). Although the regulations do not define the phrase "general designation," the regulations define the word "program." The regulations provide,

"*Program* means:

(a) An individual or entity (other than a general medical care facility) who holds itself out as providing, and provides, alcohol or drug abuse diagnosis, treatment or referral for treatment; or

(b) An identified unit within a general medical facility which holds itself out as providing, and provides, alcohol or drug abuse diagnosis, treatment or referral for treatment; or

(c) Medical personnel or other staff in a general medical care facility whose primary function is the provision of alcohol or drug abuse diagnosis, treatment or referral for treatment and who are identified as such providers." (Emphasis in original.) 42 C.F.R. § 2.11 (2000).

The definition of the word "program" narrows the breadth of the term "general designation." As defined in the regulations, a program is an entity "other than a general medical care facility." The regulations further provide that a program is a unit within a general medical facility "which holds itself out as providing, and provides, alcohol or drug abuse diagnosis, treatment or referral for treatment," and which is identified as such. Lastly, the regulations state that a program may also consist of

medical personnel or other staff identified as providers of treatment for alcohol or drug abuse.

In the present case, the authorization plaintiff gave to Royal Insurance is overly broad. It does not refer to any particular medical practitioner or medical program involved in the treatment of alcohol or drug abuse. For that reason, the authorization fails to comply with the requirements of the regulations. Instead, the authorization makes available any and all records of medical treatment plaintiff received from any "medical or medically related facility." The authorization thus contemplates the release of all treatment records gathered by medical or medically related facilities. Indeed, in my estimation, the authorization encompasses records from any facility with a medically related purpose. No record can be safely excluded under such a broad authorization.

In my view, the majority ignores the word "program" in construing the phrase "general designation." Moreover, in construing the phrase "general designation," the majority seems to read the word "designation" out of the regulation. The majority faults the appellate court because that court "essentially read the word 'general' out of the phrase." 198 Ill. 2d at 260. However, the majority commits the same type of error in reading the word "designation" out of the phrase.

The majority also fails to give proper consideration to the purpose of the federal Act. In *Ellison v. Cocke County*, 63 F.3d 467, 470-71 (6th Cir. 1995), the court explained,

"The underlying purpose of the Drug Abuse Office and Treatment Act of 1972, from which the confidentiality provision of the antecedent Section 290ee-3 derived, was 'to bring about the most effective deployment of federal resources against the devastating growth of drug abuse in the United State.' [Citation.] The thrust of the Act was wholly administrative and bureaucratic: to coordinate federal drug abuse prevention efforts. [Citations.]

The confidentiality of medical records maintained in

conjunction with drug treatment programs was essential to that endeavor. Congress felt that 'the strictest adherence' to the confidentiality provision was needed, lest individuals in need of drug abuse treatment be dissuaded from seeking help."

The federal Act limits disclosure of a patient's records to releases made with the prior written consent of the patient. Even with a written consent, however, disclosure is limited to "such extent, under such circumstances, and for such purposes as may be allowed under regulations prescribed pursuant to subsection (g)" of the section. 42 U.S.C. § 290dd—2(b)(1) (1994). In turn, subsection (g) provides,

"The Secretary shall prescribe regulations to carry out the purposes of this section. Such regulations may contain such definitions, and may provide for such safeguards and procedures *** as in the judgment of the Secretary are necessary or proper to effectuate the purpose of this section, to prevent circumvention or evasion thereof, or to facilitate compliance therewith." 42 U.S.C. § 290dd—2(g) (1994).

The regulations are thus intended to further the purpose of the Act.

As noted above, the authorization plaintiff executed is quite broad. It authorizes the release of records of plaintiff's treatment at hospitals, clinics, health-care facilities, and other medical or medically related facility. To uphold the validity of such an authorization eviscerates the confidentiality provision and countermands the purpose of the federal Act.

The majority relies upon the 1987 amendments to the regulations and the purpose therefor to support the conclusion that the authorization is valid. The majority reasons,

"The amended regulation permits a more general description of the person or program to make the disclosure. This relaxed requirement serves the amendments' stated purpose of relieving patients of the necessity of executing

multiple consent forms or specifically naming each and every program or person entitled to make disclosure of alcohol or drug treatment records." 198 Ill. 2d at 260.

Without questioning the majority's view of the 1987 amendments, one wonders whether an amendment adopted for the convenience of patients should be interpreted in such a manner as to deprive the patients of the confidentiality of records that the legislature endeavored to protect in the first place. The purpose of the regulations is subordinate to the purpose of the federal Act. The regulations are intended to further the federal Act and cannot exist without reference to the Act and the purpose of the Act.

### B. Time Reasonably Necessary

As noted above, the written consent must contain "[t]he date, event, or condition upon which the consent will expire if not revoked before. This date, event, or condition must insure that the consent will last no longer than reasonably necessary to serve the purpose for which it is given." 42 C.F.R. § 2.31(a)(9) (2000).

The authorization plaintiff gave was for a period of 2½ years from October 12, 1994. Plaintiff argues that a period of 2½ years is substantially longer than the time period contemplated in the regulation. The majority rejects plaintiff's argument. The majority states,

"The authorization here complied with the regulation by stating the date upon which it would cease to be valid. The stated purpose for the authorization was to enable Royal to determine plaintiff's eligibility for insurance and to evaluate any claims made by plaintiff under his insurance policy. We cannot say as a matter of law that a period of 2½ years for the purpose of evaluating any claims plaintiff might make under the insurance policy is invalid." 198 Ill. 2d at 263.

The majority ignores the fact that plaintiff did not make a claim for the treatment he received at the Behavioral Health Center. Thus, the more appropriate

question here is whether a period of 2¹/₂ years to determine plaintiff's eligibility for insurance is excessive. In light of the federal Act's purpose, I believe that the time period at issue was not reasonably necessary to determine plaintiff's eligibility for insurance coverage.

I also believe that it is more appropriate to decide the question of reasonableness on the facts of each case. Factors such as the length of the policy may well inform the determination as to reasonableness. The majority holds, as a matter of law, that a period of 2¹/₂ years is valid for the purpose of evaluating a claim. Will this time period now become an industry standard? I, for one, question the wisdom of such a pronouncement.

## C. Cause of Action

In count I of his complaint, plaintiff alleged that Rush-Presbyterian breached the physician-patient relationship by releasing his records without first advising plaintiff that it would do so. In count II of the complaint, for invasion of privacy, plaintiff alleged that Rush-Presbyterian wrongfully released his medical records without his prior authorization or consultation. In count III of the complaint, plaintiff sought damages for negligent infliction of emotional distress. Count III is also based upon the allegedly improper release of plaintiff's medical records. Since plaintiff authorized the release of the medical records, he can only maintain an action based on the wrongful release of the records if the authorization is invalid.

On its face, the authorization plaintiff gave Royal Insurance is valid. Plaintiff signed the authorization so that Royal Insurance would process plaintiff's application for insurance and issue an insurance policy to plaintiff. The authorization is rendered invalid only if it fails to comply with the confidentiality provision of the federal Act and regulations. The majority finds that the authorization is valid. Implicit in this holding is that a

plaintiff can maintain a cause of action for breach of the physician-patient relationship, invasion of privacy, or negligent infliction of emotional distress based upon the release of the plaintiff's medical records if the plaintiff's written consent fails to comply with the federal Act and regulations.

It should be noted, however, that the federal courts have determined that section 290dd—2 does not support a private damages action. *Chapa v. Adams*, 168 F.3d 1036, 1038 (7th Cir. 1999); *Ellison*, 63 F.3d at 471. In *Ellison* the court explained,

> "Congress felt that 'the strictest adherence' to the confidentiality provision was needed, lest individuals in need of drug abuse treatment be dissuaded from seeking help. [Citation.] However, there is no indication that the confidentiality provision was intended to be enforceable by aggrieved private parties; the purpose of the provision was not to create private rights as much as it was to create public penalties in order to deter disclosure." *Ellison*, 63 F.3d at 471.

See also *Doe v. Broderick*, 225 F.3d 440, 447 (4th Cir. 2000) ("We hold that section 290dd—2 does not create 'enforceable rights, privileges, or immunities within the meaning of § 1983' ").

The alleged invalidity of the authorization is based upon the failure to comply with the confidentiality provision and the regulations controlling the disclosure of alcohol- and drug-abuse records. The majority fails to consider, however, whether it is appropriate to base a private damages action upon a violation of the federal Act and regulations. I agree with the federal decisions cited above that a private damages action based upon a violation of the federal Act and regulations is inappropriate. Accordingly, I would affirm the circuit court's order granting judgment on the pleadings to Rush-Presbyterian.

## CONCLUSION

I disagree with the majority's conclusion that the au-

thorization for the release of plaintiff's medical records is valid. The authorization fails to comply with the regulations concerning the release of medical records for the treatment of alcohol and drug abuse. The authorization is overly broad. Moreover, upholding an authorization of such breadth is contrary to the purpose of any alcohol- or drug-abuse program. As recognized by the legislature, the success of an alcohol- or drug-abuse program is largely dependent upon maintaining the confidentiality of the patient's records. Because of the stigma associated with alcohol- or drug-abuse, a patient may be deterred from seeking treatment if the patient believes that his or her records will be disclosed to third parties. Although I strongly disagree with the majority's analysis, however, I must join in the result the majority reaches. I am persuaded that a patient may not maintain a private damages action for the release of his medical records where the action is grounded upon a violation of 42 U.S.C. § 290dd—2 and the federal regulations concerning the disclosure of alcohol- or drug-abuse treatment records. In my opinion, the trial court properly entered judgment on the pleadings in favor of Rush-Presbyterian. Accordingly, I concur in the result in this case.

JUSTICE KILBRIDE, dissenting:

I agree with Justice Freeman's analysis of the regulation requiring a "general designation of the program or person" and reject the majority's interpretation of this provision. See 42 C.F.R. § 2.31(a)(1) (2000). In addition, I note that the comments to the amendments emphasize the flexibility for patients in defining the scope of their consent. Under the amendments, patients may now use a single form to consent to the disclosure of records from a single named program or from only certain kinds of programs. 52 Fed. Reg. 21,796, 21,799 (June 9, 1987). "'This change will permit a patient to consent to disclosure from a category of facilities or from a single

specified program. For example, a patient who chooses to authorize disclosure of all his or her records \*\*\* would consent to disclosure *from all programs in which the patient has been enrolled as an alcohol or drug abuse patient.*' " (Emphasis added.) 198 Ill. 2d at 259, quoting 52 Fed. Reg. 21,796, 21,799 (June 9, 1987). This example clarifies the proper interpretation of the "general designation" requirement by recognizing that patients may now identify either a *"category of facilities"* or "a single specified program" in their consent. (Emphasis added.) 52 Fed. Reg. 21,796, 21,799 (June 9, 1987). Thus, a consent could validly authorize the disclosure of records from all programs falling within the *category* of "alcohol or drug abuse programs" by explicitly identifying that type of program.

In the instant case, however, the consent did not designate any specific program category. Instead, it broadly claimed to authorize disclosure of all types of medical records. The excessive breadth of this consent contradicts the language in the comments and undermines the strong confidentiality protections secured by the Public Health Services Act (federal Act) (42 U.S.C. § 201 *et seq.* (1994)). See also *Chapa v. Adams*, 168 F.3d 1036, 1038 (7th Cir. 1999) (noting that the purpose of the federal regulations is to fight the country's drug problem, primarily by encouraging voluntary treatment, and recognizing that addicts are more likely to seek treatment if it is provided confidentially). Thus, I join the portion of Justice Freeman's special concurrence rejecting the majority's interpretation of the "general designation" language in the regulations. I do not adopt the special concurrence in its entirety, however, because I believe it is inappropriate at this time to decide whether a private cause of action may be maintained here since that issue was not briefed or argued by the parties.

Moreover, I disagree with the majority's treatment of

a second issue. The majority summarily disregards the plaintiff's argument that the scope of his authorization did not include medical records created after he signed the consent form. Rather than address this issue on its merits, the majority perfunctorily concludes that the plaintiff failed to provide sufficient supporting authority for his argument. 198 Ill. 2d at 264-65. Yet, an examination of the majority's own extensive recitation of the comments to the amendments supports the plaintiff's argument. See 198 Ill. 2d at 259.

The comments explain that the changes allow patients the choice of authorizing, on a single form, disclosure of records " 'from all programs in which the patient *has been enrolled* as an alcohol or drug abuse patient.' " (Emphasis added.) 198 Ill. 2d at 259, quoting 52 Fed. Reg. 21,796, 21,799 (June 9, 1987). The past tense of this language clearly and explicitly directs it at patient records created prior to the signing of the consent, not those generated months later.

This interpretation is further supported by the comments' statement that the amendments seek to maintain "the potential for a patient's making an informed consent to disclose patient identifying information" since " '[t]he patient is in [a] position to be informed of any programs in which he or she *was previously enrolled*.' " (Emphasis added.) 198 Ill. 2d at 259, quoting 52 Fed. Reg. 21,796, 21,799 (June 9, 1987). Again, the language clearly limits disclosure to existing records of past programs. Moreover, it is well established that the alleged waiver of a right will not be upheld unless the waiver was knowing and voluntary. *Vaughn v. Speaker*, 126 Ill. 2d 150, 161 (1988). Waiver is consensual and consists of the intentional relinquishment of a known right. *Western Casualty & Surety Co. v. Brochu*, 105 Ill. 2d 486, 499 (1985). It would defy logic to conclude that a patient may validly waive the right of confidentiality in

records that do not even exist at the time, thereby giving informed consent to their disclosure. See *Vaughn*, 126 Ill. 2d at 161; see also *Schiff v. Prados*, 92 Cal. App. 4th 692, 706, 112 Cal. Rptr. 2d 171, 182 (2001) ("meaningful choice is at the heart of the informed consent doctrine").

Thus, I believe that the comments to the amendments support the plaintiff's contention that a valid consent must be limited to the disclosure of existing records and it excludes records subsequently generated. Since the scope of the consent signed by the plaintiff is impermissibly broad and violates the protective purpose of the regulations and the federal Act, I dissent from the majority opinion.